## STATE *v.* GEORGE HANNETT.

*Arson.    Evidence.    Stenographer.    Counsel's Right in Commenting upon ·Evidence.    Other Crimes, when not to be Proved.*

1. Our statute has not changed the definition of the crime of arson as given by the common law,—the wilful and malicious burning of the dwelling-house of another; hence, when one burns the dwelling-house that he is lawfully occupying, in legal sense, it is not arson ; for arson is a crime against the security of the dwelling-house as such, and, not, as property.

2. To prove that the respondent had a motive for burning the building, evidence was admissible to show his ill-feeling and its intensity towards his wife, who had an interest in it ; but not the cause, merits and consequences of the quarrel ; hence, it was error to admit proof that the wife had procured a divorce for intolerable severity ; that the respondent had been restrained by injunction from inflicting personal abuse upon her ; and that, subsequently, the marriage was annulled on the ground of bigamy.

3. It was error to read in the hearing of the jury the record of the court in the divorce proceedings to establish the competency of the wife as a witness, it being a question solely for the court to determine.

4. It was error to allow the State's attorney to go into an inquiry, against an exception, on the cross-examination of the respondent as to whether he had been complained of and fined by a town grand juror for ill-treatment of his wife.*

5. To contradict the respondent by proving that he had testified differently on the former trial under the same indictment the admissibility of the stenographer's notes of his cross-examination depended on their relevancy ; if relevant, admissible, otherwise, not ; hence, it was the duty of counsel to have selected those passages contradictory to his last evidence.

6. A stenographer, although a sworn officer of the court, when he reads his notes of the testimony of a former trial, as evidence, must be sworn like any other witness ; but if not, if known to the opposite counsel, the objection should be raised in season that the oversight may be corrected.

7. Counsel, in their arguments to the jury, are bound to keep within the limits of fair and temperate discussion of the evidence in the case. Any violation of this rule entitles the adverse party to an exception.

8. It is the duty of the court in a criminal trial in its charge to the jury to review and explain the evidence and claims of the respondent as fully and fairly as those of the State.

* See *Comm.* v. *Jackson*, 13 Reporter, 626, (Sup. Ct. Mass. 1882, opinion by DEVENS, J.,) a good case, illustrating the rule that independent crimes cannot be proved, citing the 109 Mass. 457; 5 Cox, C. C. 210; 18 Ohio, 221; also, pointing out the exceptions to the rule, as uttering counterfeit bills, (4 Met. 43 ; 8 Ib. 235) ; selling false plate or jewelry, (L. R. 2 C. C. 128) ; embezzlement, (10 Gray 173 ; 1 Allen, 575 ; 6 B. & C. 145) ; conspiracy to defraud the revenue, (1 Story, 135) ; previous attempts to burn the same building to defraud an insurance company, (119 Mass. 354 ; 126 Ib. 42.) —REP.

INDICTMENT for burning a dwelling-house, Caledonia County, December Term, 1881. Jury trial, Ross, J., presiding; plea, not guilty; verdict, guilty.

The facts are sufficiently stated in the opinion except the following. At the close of the charge to the jury, the respondent's counsel claimed that the court had not reviewed his evidence and claims as fully as it had those of the State, and requested the court to do so; but the court declined to modify its charge.

*Elisha May*, for the respondent.

House—and " dwelling-house "—do not mean the same thing. Bish. Stat. Crim. s. 213. The gist of the offence is the injury to the security of human habitation or occupation—and not to the property. 2 Bish. Cr. Law, ss. 12, 13; *State* v. *Toole*, 29 Crim. c. 342. The same doctrine is laid down in all the text writers upon criminal law. 2 Whart. Crim. Law, s. 1671; 2 John. 105; 3 Black. (Ind.) 485; 5 Stew. (Ala.) 175; 52 Ala. 357. It was error to admit evidence of the divorce, &c. *State* v. *LaPage*, 57 N. H. 245; s. c. 24 Am. Rep. 64; 50 Vt. 316; 15 Am. Rep. 427. The record of the divorce proceedings should not have been used as it was. 58 N. H. 373. As to the remarks of counsel on inadmissible evidence, see 96 Ill. 209. Respondent ought not to have been inquired of as to whether he had ever been complained of by grand juror and fined. 72 N. Y. 57; s. c. 28 Am. R. 182; 8 Tex. Ct. Ap. 164; 123 Mass. 239; 66 Me. 684; 119 Mass. 242. The charge was unfair. 56 Ind. 584; *State* v. *McDonnell*, 32 Vt. 491. The stenographer should have been sworn. Roscoe's Cr. Ev. p. 117; 6 Tex. Ct. Ap. 439; 6 Rep. 232. The respondent could not waive any of his rights. Proffatt, Jury Trial, s. 113; 1 Bish. Cr. Pr. s. 422; 52 Vt. 376.

*Henry C. Ide*, for the State.

The testimony relating to the divorce, injunction and the respondent's ill-treatment of his wife was admissible. Roscoe's Crim. Ev. p. 90.

If the testimony is admissible for any purpose, it is not to be excluded because it may also show the respondent to have been

an unworthy man, or to have committed other crimes. The court properly restricted the application of the evidence. Roscoe's Crim. Ev. p. 90; *Rex* v. *Salisbury*, 5 C. & P. 155; *Rex* v. *Clews*, 4 C. & P. 221; *Rex* v. *Richardson*, 2 F. & F. 343.

A case directly in point is *State* v. *Watkins*, 9 Conn. 47, where in an indictment against a man for killing his wife, the State was allowed to prove an adulterous intercourse between the prisoner and another woman, not to prove the *corpus delicti*, but to repel the presumption of innocence arising from the conjugal relation. See also *Hendrickson* v. *People*, 1 Parker C. R. 406.

The record of the divorce was admissible. Roscoe's Crim. Ev. p. 124.

The exception to the charge as argumentative cannot be maintained, for two reasons:

1st. Because the charge was fair and called attention in an impartial manner to the claims of both sides.

2d. Because, under the law of this State, a judge has a right to be unfair, unjust, and argumentative in commenting upon the evidence. *Stevens* v. *Talcott*, 11 Vt. 25; *Gale* v. *Lincoln*, 11 Vt. 152; *Yale* v. *Seeley*, 15 Vt. 221; *Sawyer* v. *Phaley*, 33 Vt. 69; *Missisquoi Bank* v. *Evarts*, 45 Vt. 293; *Sampson* v. *Warner*, 48 Vt. 247.

The following authorities may aid the court in sustaining this proceeding. The building was a dwelling-house, inhabited by man, and intended for such habitation. It was the property of Stevens as alleged in the indictment.

That the property may properly be described as the *executor's* in an indictment for burglary is shown by s. 1567 of vol. 2, Whart. Crim. Law; 2 East, P. C. 499. The rule as to ownership is the same in burglary and arson. Whart. Crim. Law, vol. 2, s. 1677. Archibald's Crim. Prac. and Pl. vol. 2, marginal page 487, note.

In *Commonwealth* v. *Wade*, 17 Pick. 398, a case of arson, the property was laid in the indictment as in the general owner and one of the tenants, there being also other tenants not named in the indictment, and the Court ruled that there was a failure of proof, saying "the government must show that *either the general property, or the occupancy*, was in the persons named." In the

present case there was proof that the general property was in the person named.

In *Rex* v. *Rees*, 7 C. and P. 568. it was held that a house occupied by a gardener, in an indictment for burglary, might be described either as his or his master's who owned it. 2 East, P. C. 1027, and 1020 ; Arch. Cr. Pr. & Pl. 2 vol. marg. p. 488, n.


The opinion of the court was delivered by

POWERS, J. The respondent was indicted and tried for the crime of arson in burning a dwelling-house of Joseph M. Stevens, executor of Francis Oliver.

The exceptions state that the fire occurred January 10, 1880, and that the respondent was then living in the house, and had the right to occupy the same until April 1, 1880.

These facts appearing on the trial, the respondent requested the court to rule and hold that the respondent could not be convicted of the crime of arson ; but the court ruled otherwise. At the common law, arson was defined to be the wilful and malicious burning of the dwelling-house of another. Our statute has left the definition of the crime as it stood at common law. The offence is a crime against the security of a dwelling-house as such, and not against the building as property. In cases where the ownership is in one, and the occupancy in another, the indictment properly avers that the dwelling-house belongs to the latter.

If the occupant is in possession rightfully and burns the house, he cannot, in legal sense, be guilty of burning the dwelling-house of another—he burns *his own* dwelling-house.

The authorities supporting this proposition are too numerous to be cited. They are collected in the text books.

In order to show a motive for the respondent to burn the house, evidence was offered tending to show ill-feeling between the respondent and his wife Mary, and threats of the respondent that he would " lay everything low," rather than permits Mary's brother to occupy the house. No question is made as to the right of the State to show these facts. Mr. Hathaway, a witness for the State, was permitted against the respondent's exception to testify that in 1876, he brought a petition for a divorce in behalf

of said Mary against the respondent, based upon the ground of the respondent's intolerable severity ; that in 1879 he brought a petition to annul the said Mary's marriage with the respondent, on the ground that the respondent had another wife living at the time of such marriage ; that the respondent was restrained from inflicting personal abuse upon said Mary by injunction ; and that in June, 1880, the marriage was annulled. This testimony, we think, went further than the rule allows. Any evidence tending to show a family quarrel, or a state of hostile feeling, between the respondent and his wife, who would be a loser by the burning of the house, is within the rule. But the merits of that quarrel cannot be investigated. The independent fact of a hostile feeling and its intensity may be shown. The cause, the merits and the consequences of it, cannot be shown.

The evidence in question was well calculated to inflame the minds of the jury against the respondent, by showing him guilty of other offences than the one on trial.

In order to establish the competency of the said Mary as a witness, the state produced and read aloud in the hearing of the jury the record of the court in the divorce proceedings, showing that a petition was filed and decree obtained as testified to by Mr. Hathaway. It is apparent that the jury had nothing to do with this record. It was offered to the court, that the court might determine upon inspection whether the marriage relation had been dissolved and thus the witness made competent. We can imagine no reason for reading it in the presence of the jury except a desire upon the part of counsel to prejudice the minds of the jury by proof that the court, in the divorce proceeding, had found the charges testified to by Hathaway to be true. While it may be doubtful whether this was such error as would sustain an exception, still in the evident view in which it was offered by counsel, we think, in a criminal case, that such practice is unwarrantable and tends to break down the safeguards which the law throws around persons on trial for crime.

On cross-examination of the respondent, the State's attorney was permitted against exception to go into an inquiry to show that the

respondent was complained of by the grand juror of Walden, for ill-treatment of his wife, and, being prosecuted therefor, was fined. This evidence is of the same character as that of Mr. Hathaway above referred to, and like that was inadmissible.

To contradict the evidence of the respondent, the stenographer was called to the stand, and asked to read his notes of the respondent's testimony in cross-examination on a former trial under this same indictment. The respondent insisted that only such parts of the former testimony, as related to subjects upon which the respondent had testified to on the present trial, should be read by the stenographer, but the court ordered the stenographer to read the whole cross-examination of the respondent on the former trial. Much of the former cross-examination was irrelevant to the case; much of it foreign to any inquiries addressed to the respondent on this trial; and much of it calculated to prejudice the respondent's case. For the purpose of contradicting the respondent's testimony on the present trial, it was the duty of counsel to select such passages in the notes of his former testimony as were claimed to be in conflict with his present story. It was error to go further. He could not be contradicted upon immaterial issues, any more, by proof of his declarations in court respecting them, than by his declarations out of court. If the objection that the stenographer had not been sworn as a witness had been sooner raised, it would have been sound. But the case shows that the respondent's counsel knew while he was reading his notes that he had not been sworn as a witness, and made no objection till the argument had commenced. The objection was then raised, and the court ruled that as he was a sworn officer of court it was unnecessary that he should be sworn as a witness. No exception was taken to this ruling. If counsel had persisted in their objection the court might have deemed it proper to stop the argument and correct the oversight. It is clear that any sworn officer of court, whether it be the reporter, clerk, sheriff, attorney or other officer, when he takes the witness stand as a witness must take the oath of a witness. He is then not discharging his *official duties;* his *oath of office* is no protection to the party against perjury. The

reporter reads his notes of a former trial as an attorney would read his; in either event their authenticity and correctness should be attested by his oath.

It is argued that counsel for the prosecution overstepped the limits of legitimate argumentation in his comments upon the facts testified to by Mr. Hathaway. The fact that counsel commented vigorously upon the offences of the respondent referred to by Mr. Hathaway, illustrates the purpose of counsel in offering the evidence. It is difficult to see why counsel may not comment upon any evidence in the case. If the evidence is not fit to be talked about, it is not fit to be admitted. But no exception was taken to the argument of counsel.

Counsel in their arguments to the jury are bound to keep within the limits of fair and temperate discussion. The range of that discussion is circumscribed by the evidence in the case; any violation of this rule entitles the adverse party to an exception which is as potent to upset a verdict as any other error committed during the trial.

We think the charge of the court did not fully answer the respondent's request to have his claims explained and reviewed as fully as those of the State had been. This request was one the respondent had the right to make, and, in a criminal case, especially, was one that should be fairly answered.

The sentence is vacated, the judgment is reversed, and the case remanded for a new trial.