No. 2513.

WILSON MULLIGAN *v.* THE STATE.

25  199
39  673

1. ARSON—EVIDENCE—TERM DEFINED.—"House," as that term is defined by our statute denouncing the offense of arson, is "any building or structure enclosed within walls and covered, whatever may be the materials used for building." Arson, as defined by the statute, is the wilful burning of any house included within the meaning of the term "house" as above defined. The indictment in this case charged the burning of a house. The proof showed that the accused, then a tenant and occupant of the premises, first demolished the house and then burned the material of which it had been constructed. *Held*, that the proof was insufficient to support the conviction for arson.

2. SAME—INDICTMENT.—Under our statute of arson a tenant during his lease is to be deemed a part owner with the proprietor of the leased house; and a part owner can not lawfully burn the house; nor can the owner burn his house if it contains property belonging to another. But an indictment against an owner or part owner for burning his house must allege such ownership in the accused, and also the particular facts which inculpate him within the exceptions to a lawful burning, as provided in article 659 of the Penal Code. See the opinion on the question.

3. SAME—FACT CASE.—Note that the indictment in this case is insufficient in its allegations to warrant the conviction of the accused as a tenant. and that the evidence is insufficient to support the conviction, inasmuch as it fails to show the burning of "a house."

APPEAL from the District Court of Rusk. Tried below before the Hon. J. G. Hazelwood.

The conviction in this case was for arson, and the penalty imposed by the verdict was a term of five years in the penitentiary.

Berry Duke was the first witness for the State. He testified that he lived in Rusk county, Texas. He was the owner of the house which was alleged in the indictment to have been burned by the defendant. That house was situated in Rusk county, and was burned during the month of December, 1886, at about three o'clock in the morning. The said house was built of logs, had four walls and was floored with rails or planks, and was covered with boards, and was about twelve feet by fourteen feet in size. The defendant, who was a tenant on the witness's place during the year 1886, used that house as a crib in which he stored corn and fodder. The said house was situated about two hundred

yards distant from witness's residence. Witness woke up about three o'clock on the morning alleged in the indictment, and discovered that the said crib was on fire. Defendant moved the last load of his household effects from witness's place about sun rise, a few hours after the crib was burned. The said crib was built of timber cut from witness's land, and was erected and burned on witness's land.

Cross examined, the witness said that the defendant built the crib in the spring of 1886, while a tenant on the land. He demanded pay for erecting the crib, in the fall, when he came to settle with witness, but witness did not pay him for it. It was understood between witness and defendant, when defendant became a tenant upon the land, that witness was not to pay him for the erection of the crib, nor for any other improvements he might make. When the proposition to erect the crib was first made by defendant, witness told him that he was too poor to pay for it. He consented, however, that defendant should put up the crib if he wanted to, but at first declined to have anything to do with it, and afterwards agreed to furnish the nails. Witness did all that he agreed to do about the matter. Defendant did not owe the witness anything after the settlement. Included in the defendant's lease were about four acres of ground, cultivated in oats, and some truck patches, for which defendant did not owe witness anything, and for which the witness did not exact nor expect any pay. Prior to the settlement, witness and defendant got along well as friends, and witness gave defendant the use of the oat and truck patches. The defendant got mad with witness because witness refused to pay for the erection of the crib. Witness could not say that the crib was standing when it was burned. It rather appeared to witness that it had been torn down and the material piled together and burned. A few of the logs belonging to one end of the crib, and the boards of which a shed to the crib was constructed, were not burned.

W. T. Brewer testified, for the State, that he was at the defendant's house on the evening before the burning of the crib, when the defendant told him that he had built the crib, and was going to burn it down. He said that he had determined to burn it because Berry Duke would not pay him for it. When witness passed the defendant's house on the next morning he saw that the crib had been burned, and that only ashes were in its place. Witness did not know whether the crib had been burned standing, or whether it had been torn down and the logs burned.

Tom Ross testified, for the State, that, on the Saturday before the burning of the crib, the defendant invited him to visit his house. Witness replied that it was too cold to visit. Defendant replied that the crib he had built, and which Berry Duke refused to pay for, would make a good fire.

E. M. Menifee testified, for the State, that defendant several times prior to the burning of the crib, told him that he was going to tear it down and burn the logs because Duke would not pay him for building it. Witness advised him against doing so, and warned him that to do so would involve him in trouble. He replied that he once built a house on rented land in east Texas, which the owner of the land refused to pay him for; that he thereupon tore it down and burned the material, and that, on his trial for arson, he was acquitted; and that he would be able, in the same way, to defeat a prosecution for burning the crib.

The State closed.

Two witnesses for the defense testified that when they reached the defendant's house, about sun down on the evening before the crib was burned, they found the crib torn down, and the logs of which it was constructed lying in an orderly pile. They slept in the same room with defendant on that night, one of them in the same bed with defendant. They did not think that defendant could have left his bed or the room on that night without awakening them. If he did leave the room he did so without awakening them. When the witnesses awakened and found the pile of logs burning, they saw that the defendant was in his bed, asleep.

*J. H. Wood,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant was convicted of arson. Two counts were contained in the indictment—one for the burning of a house, and the other for the wilful burning of a "pile of wood the same being a set of house logs." Defendant's motion to quash the indictment was sustained as to the second, or the count for wilful burning.

Appellant was the tenant of one Duke, and during his tenancy had erected a crib upon the rented premises, which crib the landlord, Duke, refused to pay for when the parties were having their settlement with a view to the expiration of the

lease. Defendant declared time and again that he would burn the crib. About the time he was moving or preparing to move from the premises he pulled down the crib, and in the night before he moved, the logs of which the crib had been built, and which he had torn down, were set fire to and burned. Two questions present themselves in connection with these facts : First, was a house burnt ? and second, if a house was burnt, could defendant be convicted for burning it when he was still in possession as a tenant of the leased premises upon which it stood ?

"Arson" is defined by our Code to be "the wilful burning of any house included within the meaning of the succeeding article of this chapter." (Penal Code, art. 651.) The succeeding article 652 defines a house as any building or structure inclosed with walls and covered, whatever may be the materials used for building. (Smith v. The State, 23 Texas Ct. App., 357.)

We think it clear that when the building was torn down, it ceased to be "a building or structure," because it had lost the arrangement of its parts, its form, make and construction. It had no longer the inclosure of walls, and it was no longer covered. It had lost all the essential characteristics of "a house." The logs might still be called "house logs," but they ceased to be "a house." They might perhaps be classed as lumber or wood, and as such the appellant might perhaps have been prosecuted and convicted for wilfully burning them, under the provision of article 665 of the Penal Code, provided he was at all liable for their destruction.

And this brings us to a consideration of the second proposition, viz: Could defendant be prosecuted and convicted for arson whilst he was still in possession and control of the leased premises upon which the property was situate when destroyed? At common law "a man could not commit arson of a house in which he has a lawful claim to abide; as a tenant from year to year or from month to month, be his term however short; or under an agreement for a lease." (2 Bish. Crim. Law, 7 Ed., sec. 13.) Mr. Wharton says "a tenant (occupancy being the test) can not be guilty at common law of arson in burning the property he occupies on lease. On the other hand a landlord, it would seem, may be guilty of arson in burning his house in a tenant's possession." (Whart. Crim. Law, 8 Ed., sec. 836; The State v. Hannett, 54 Vt., 83; same case, 4 Am. Crim. Rep., Gibbons, 38.)

Our statute, Penal Code, article 659, provides for certain excep-

tions to the rule that even the owner may destroy his own house, one of which is "when there is within it any property belonging to another;" and article 660 expressly declares that "one of the part owners of a house is not permitted to burn it." Under our statute the tenant during his lease should be considered only a part owner in the house, and the landlord certainly has a property in it which the tenant could not destroy with impunity. Still the tenant is the party entitled to the possession, and arson is regarded as an offense against the security of the habitation rather than that of the property and true ownership. But an indictment against an owner or part owner for burning his own house (articles 658, 659 and 660) must allege ownership in the accused, and the particular facts which may bring him within the exceptions as amenable to prosecution. (Fuller v. The State, 8 Texas Ct. App., 501; Willson's Crim. Forms., 411.) Appellant being a tenant entitled to occupancy and possession, he was at least a part owner and occupied such relation to the premises as in our opinion required that the indictment should have alleged the particular facts making him amenable to prosecution for the arson, in case a house has been burnt by him.

Our conclusions upon the facts and law of the case are, first, that the indictment is insufficient in allegation to warrant the conviction of this defendant, as a tenant, and, second, if the indictment had been sufficient, the evidence totally fails to establish the crime of arson—that is, "the burning of *a house.*"

The judgment is reversed and the cause remanded.

*Reversed and remanded.*