2006 VT 72

# State of Vermont v. John Rehkop

[908 A.2d 488]

No. 04-290

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 25, 2006

*William H. Sorrell*, Attorney General, and *Craig Matanle*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Rebecca Turner*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant John Rehkop was convicted in Windham District Court of three counts of sexual assault on a minor and sentenced to nine years to twenty-four years of imprisonment. The offenses allegedly occurred on the grounds of the Austine School for the Deaf in Brattleboro, Vermont, where defendant was employed as a behavioral specialist and the minor, N.K., was a fourteen-year-old student. The jury trial was complicated by the fact that both defendant and N.K. are deaf. Defendant appeals his conviction and argues that:

(1) the pretrial-motions court erred by refusing to conduct an in camera review of certain privileged counseling files pertaining to N.K.'s history of untrustworthiness; and (2) statements made by the prosecutor during closing arguments amounted to plain error requiring reversal of the conviction and retrial. We agree with both of defendant's arguments and reverse the conviction.

¶ 2. As in many cases of this nature, the trial was a credibility contest between complainant and defendant. The evidence at trial included neither physical evidence nor corroborating witnesses. The history of the case is as follows.

¶ 3. N.K. attended the Austine School between 1994 and 1999. While enrolled at another school in Massachusetts two years after she left Austine, N.K. was traveling with the girls' basketball team and playing "truth or dare" with her teammates. In response to the question of whether anyone had had oral sex with a man, N.K. answered yes and said that it was a staff member at Austine. Some time later, one of the teammates relayed N.K.'s story to a school counselor named Allison Weiner. Weiner interviewed N.K., and N.K. identified defendant as the man involved. Weiner then contacted police, who charged defendant in July 2001 with four counts of sexual assault on a minor.

¶ 4. Meanwhile, N.K.'s parents filed a civil suit in the United States District Court for the District of Massachusetts seeking $5 million in damages, alleging that Austine was negligent in its hiring, retention, supervision, and entrustment of defendant and that the school, through defendant, also committed assault and battery, deceit, and intentional infliction of emotional distress.

¶ 5. During pretrial discovery in the criminal trial, defendant came across records from the Austine School that documented a number of incidents involving lies told by N.K. The documents included a prior false allegation of improper sexual conduct made by N.K. against another student, a counseling report describing N.K.'s counseling needs regarding "respect, reputation, boundaries, defamation/character and the golden rule," a counseling referral form describing N.K. as "less than truthful — could use counseling to help her see the value of being truthful," a memo expressing staff concern that "sometimes [N.K.] may lie," and an email from school counselor Ina Schaeffer expressing concern over N.K.'s "ability to look you in the eye and tell a lie."

¶ 6. Seeking to attack the veracity of N.K.'s accusations at trial, defendant moved for deposition of Weiner and production of documents pertaining to N.K. This discovery request, which was premised on de-

fendant's erroneous belief that N.K. had made the initial report of abuse to Weiner, sought to uncover the therapeutic context of the allegations. Defendant attached the Austine records to the motion as substantiated examples of N.K.'s history of untrustworthiness, and argued a need "to explore these credibility and emotional instability issues with the complaining witness's therapist."

¶ 7. The court, Judge Carroll presiding, agreed that defendant "made at least a prima facie showing that the victim has been untruthful in the past, even about instances of sexual abuse," and noted that while communications between therapists and patients are generally privileged under Vermont Rule of Evidence 503, "[t]here is no privilege under this rule for information indicating that a patient who is under the age of sixteen years has been the victim of a crime," V.R.E. 503(d)(5). The court accordingly allowed defendant to depose Weiner, but limited the scope of discovery to: (1) details "surrounding the victim's report to the therapist of the alleged abuse by the defendant," including any inconsistent statements made by N.K. about the abuse; (2) whether N.K. had recanted any portion of her allegation; and (3) whether Weiner was aware of any false reports of abuse made by N.K. The court further limited the scope of discovery by forbidding any questions concerning N.K.'s mental health diagnosis or history of treatment.

¶ 8. During the subsequent deposition, defendant learned that N.K.'s basketball teammate, not N.K., had made the initial report of abuse to Weiner. Defendant then redeposed N.K. about the "truth or dare" game, which N.K. characterized as involving both exaggerated stories and believable ones. N.K. also testified that some of her teammates did not believe she was telling the truth. Noting the new circumstances, defendant moved to redepose Weiner on the issue of "whether the complaining witness was being treated by her therapist for problems related to telling lies, dishonesty, manipulation, improper boundaries, or emotional/psychological instability." Defendant also requested production of Weiner's notes regarding N.K., arguing that the documents were necessary to support his theory of the case that "the complaining witness lied to her friends about him and then was unwilling to admit that she lied when she was confronted about it by her therapist." Defendant sought this discovery to show that lying was a continuing problem for N.K.

¶ 9. Defendant also issued a subpoena duces tecum to Ina Schaeffer, a counselor at the Austine School who had treated N.K., and noted that

the school records showed that Austine staff members had recommended counseling for N.K. about lying. For example, a counseling referral form suggested that, when confronted, N.K. "becomes very defensive and less than truthful — could use counseling to help her see the value of being truthful." Defendant reasoned that "[t]estimony from Ina Schaeffer may illuminate the extent to which the complaining witness struggled with telling the truth," and, therefore, the testimony would "have significant impeachment value."

¶ 10. In June 2002, defendant moved the court to order the redeposition of Weiner, the deposition of Schaeffer, and the production of their records. In addition to the points described above, defendant also argued that the initiation of the civil suit diminished N.K.'s interest in the confidentiality of the records. Defendant relied on the exception to the general patient privilege contained in Rule 503(d)(3), which states, "[t]here is no privilege under this rule as to a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense," and argued that the civil complaint "clearly puts her mental state at issue in the federal case, and constitutes a waiver of the patient privilege not only in that proceeding but [in the criminal case] as well."

¶ 11. In granting the motion in part and denying it in part, Judge Carroll first found that the documents requested by defendant were privileged under Rule 503, and characterized our holdings in *State v. Percy*, 149 Vt. 623, 548 A.2d 408 (1988), and *State v. Roy*, 151 Vt. 17, 557 A.2d 884 (1989), as standing "for the proposition that privileges held by victims and witnesses will not be overcome easily." The court then articulated a balancing test for determining whether the records were discoverable: "if the defendant makes a showing of a compelling need for information, the various privileges recognized by law may be overcome in limited circumstances" (internal quotations omitted).

¶ 12. The court held that defendant did not show a compelling need for several reasons. First, while acknowledging that the school records provided by defendant showed "certain problems which the school has had with [N.K.]," including "a prior false allegation of inappropriate touching," the court reasoned that "defendant already has information available to him which he may attempt to utilize to show the victim's untrustworthy behavior and history of lying." Additional information, the court held, "would be cumulative at this point." Second, the court characterized the information as useful for impeachment purposes only and not "sought in order to disprove an element of the offense or

negate a contested fact in the case." Third, the court held that defendant had made "no showing that the information he seeks relates in any way to the victim's ability to recall or perceive events with accuracy." Weighing these concerns in the aggregate against N.K.'s confidentiality interests, the court held that "defendant's need is far outweighed by the right of the alleged victim to freely seek mental health counseling and to preserve her privacy."

¶ 13. The court then ruled that N.K. had not waived her patient privilege by bringing the civil suit against the Austine School, reasoning: (1) it was the State, not the victim, that was pursuing the criminal case; (2) "[t]he information would be used for a totally different purpose — to attack the patient's credibility"; and (3) a contrary holding "would encourage victims to not seek redress in the civil courts when this is available to them." Accordingly, the court denied defendant's request for further deposition of Allison Weiner and for production of her records. The court allowed limited deposition of Ina Schaeffer within the limits previously imposed on the deposition of Weiner. Defendant was tried before Judge Wesley and convicted of three counts of sexual assault on a minor.

¶ 14. On appeal, defendant argues first that the court erred in denying his motion seeking to redepose Weiner, to depose Schaeffer, and for in camera review of their records to determine whether they contained any evidence material to his defense, and second that certain statements made by the prosecutor, without objection, during closing arguments require reversal. In Section I, we hold that defendant was entitled to in camera review of the counselors' records to enable the court to determine whether any portion of the records supported defendant's theory that N.K. had a history of lying. In so holding, we emphasize that N.K.'s veracity is the only basis proffered by defendant that justifies in camera review, and we recognize that in camera review could not be properly based on other matters mentioned by defendant, such as "respect, reputation, boundaries, defamation/character and the golden rule," or "manipulation, improper boundaries, or emotional/psychological instability." In Section II, we hold that the prosecutor's statements warrant reversal under the plain error standard.[1]

---

[1] Defendant also argues on appeal that the court committed plain error by omitting from the jury instructions the precise locations of the alleged sexual encounters as

## I.

¶ 15. In agreeing with defendant that due process requires in camera review of any records of Weiner or Schaeffer concerning N.K.'s veracity, we do not reach the question of whether any information contained in the records would actually be admissible at trial. Our review is limited only to the question of whether defendant's constitutional need for the information outweighed whatever confidentiality interest remained in N.K.'s counseling records to an extent that warrants an in camera review. Though pretrial discovery matters are generally within the discretion of the trial court, we review de novo defendant's challenge to the constitutionality of the discovery procedures at issue. *State v. Roya*, 167 Vt. 594, 595, 708 A.2d 908, 909 (1998) (mem.).

¶ 16. Central to this decision is the jurisprudential view of privileges, which are protections from disclosure granted in narrow circumstances. In *United States v. Nixon*, Chief Justice Burger discussed various privileges, including the Fifth Amendment protection against self-incrimination, attorney-client privilege, and executive privilege:

> These and other interests are recognized in law by privileges against forced disclosure, established in the Constitution, by statute, or at common law. Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.

418 U.S. 683, 709-10 (1974).

¶ 17. When relevant evidence is excluded from the trial process for some purpose other than enhancing the truth-seeking function, the danger of convicting the innocent increases. To that end, "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States*, 384 U.S. 855, 870 (1966). On the other hand, disclosure of privileged information adversely affects the purposes underlying the need for confidential relationships. Judicially-ordered disclosures of information also serve as a disincentive to the maintenance of such relationships. Thus, though not expansively construed, privileges held by victims and witnesses are not easily invaded.

---

described in the charging documents. In light of our decision, we need not address this issue.

¶ 18. When the State possesses evidence that is material to the guilt or innocence of a defendant, "[t]here can be no dispute that due process principles guarantee the right of a defendant to discover relevant evidence, whether favorable or harmful." *State v. Dunbar*, 152 Vt. 399, 408, 566 A.2d 970, 975 (1989) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The prosecutorial obligation to disclose evidence material to guilt or innocence does not necessarily extend, however, to information held by private entities, because the prosecution might otherwise be placed "in the untenable position of facing an obligation to disclose a file that it did not have and was unable to obtain." *Roy*, 151 Vt. at 34, 557 A.2d at 894. Although the United States Supreme Court relied on the prosecutorial obligation to disclose material evidence as part of its rationale for requiring in camera review of privileged records in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), there is little justification for applying a different analysis when privileged records are held by private entities rather than by the government. "[A] defendant's rights are no less worthy of protection simply because he seeks information maintained by a non-public entity." *State v. Cressey*, 628 A.2d 696, 704 (N.H. 1993). Accordingly, we have recognized that a case may arise where due process will require some access to privileged information about the victim not held by the State. *Percy*, 149 Vt. at 635, 548 A.2d at 415.

¶ 19. *Ritchie* is the leading case on the issue of pretrial access to privileged records. In that case, a father appealed his conviction for sexually assaulting his thirteen-year-old daughter and argued that the trial court erred by denying his request for access to state juvenile records pertaining to the alleged abuse. 480 U.S. at 43. The father argued that the records "might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." *Id.* at 44. Because the juvenile records were held by a state agency, the United States Supreme Court analyzed the claim as a due process challenge based on the prosecutorial obligation to disclose evidence that is material to the defense. *Id.* at 57; see also *Brady*, 373 U.S. at 87 (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment").

¶ 20. The Court did not hold, however, that the due process obligation to disclose material evidence necessarily outweighed a statutory privilege in every case. The records at issue in *Ritchie* were juvenile records, compiled by the state, that documented a past investigation

into allegations of sexual abuse. *Ritchie*, 480 U.S. at 43. While the Court acknowledged that "the public interest in protecting this type of sensitive information is strong," *id.* at 57, the Court noted that the statute protecting the files in question allowed for their disclosure pursuant to court order. *Id.* at 57-58. The Court distinguished this type of conditional privilege from "a case where a state statute grants [the state agency] the absolute authority to shield its files from all eyes," and reasoned that *Brady* required disclosure of any material evidence contained in the files. *Id.* at 57.

¶ 21. The *Ritchie* Court, however, did not allow the defendant unfettered access to the information. The Court instructed the trial court to conduct an in camera review of the privileged files to determine whether they contained any evidence material to the defense, but not before requiring the defendant to make a particularized showing that the files were likely to contain such evidence. See *id.* at 58 n.15 (holding that "Ritchie, of course, may not require the trial court to search through the [privileged] file without first establishing a basis for his claim that it contains material evidence"). The Court thus remanded the case to the trial court to allow the defendant an opportunity to make this showing. *Id.* at 58. Upon such a showing, the trial court was instructed to review the files as follows:

> Ritchie is entitled to have the [state agency] file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial. If the records maintained by [the state agency] contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the prior conviction.

*Id.*

¶ 22. We first applied the *Ritchie* analysis in *Percy*, where a defendant appealed his conviction for sexual assault and kidnapping and argued, among other things, that the trial court erred by denying his request for discovery of privileged communications between the victim and a sexual assault therapist. 149 Vt. at 631-32, 548 A.2d at 413. The defendant argued that disclosure was necessary because "the victim had disclosed she was receiving professional counseling in a deposition," and this fact warranted investigating "the veracity and reliability of [her] statements as well as [her] mental, emotional and psychological condition." *Id.* at 632, 548 A.2d at 413 (internal quotations omitted).

¶ 23. We found significant differences between Percy's request and the circumstances in *Ritchie*. First, we identified the compelling public interest in protecting communications between sexual assault therapists and victims, and found no exception to that privilege. *Id.* at 635, 548 A.2d at 415. We noted the level of candor required of such communications and explained that "[w]e are particularly solicitous of the need of a victim of a sexual assault to seek and receive mental health counseling without fear that her statements will end up in the public record." *Id.* Thus, in the absence of an exception to an important privilege, we held that the privacy interest at stake was more compelling than in *Ritchie*.

¶ 24. Furthermore, unlike in *Ritchie*, the defendant had already had an opportunity to make a particularized showing with respect to the information. We found that the defendant had "made virtually no showing that the information sought includes material evidence — indeed, defendant essentially admitted the underlying acts." *Id.* at 634, 548 A.2d at 414-15. In our line of post-*Ritchie* cases, the quality of the defendant's showing — or the lack thereof — has been a central reason for our denial of access to privileged records. For example, in *Roya*, where the defendant challenged the constitutionality of a provision of our rape-shield statute, 13 V.S.A. § 3255(c), which prohibits a defendant from questioning a complaining witness during deposition about prior sexual conduct except in limited circumstances, the defendant "made no offer of proof to show that the evidence is material to his defense and not otherwise available." 167 Vt. at 596, 708 A.2d at 910. In *Roy*, where a defendant sought access to a police officer's personnel file in order to explore the officer's "reputation for use of excessive force," 151 Vt. at 31, 557 A.2d at 893, the defendant made only a "vague reference to the officer's reputation" and did not make an offer of proof or argue in any way the information might actually be admissible at trial, *id.* at 34-35, 557 A.2d at 895.

¶ 25. Thus, in balancing the compelling privacy interests at stake in *Percy* with the defendant's weak showing of constitutional need, we concluded that "[w]e are unwilling to require the victim to forego counseling or risk disclosure absent the most compelling justification — none has been asserted here." 149 Vt. at 635, 548 A.2d at 415. We acknowledged, however, "the possibility that a case will arise where due process will require some access to privileged information about the victim not held by the State." *Id.*

■ ¶ 26. We agree with defendant that this is that case. Because defendant made a sufficiently particularized showing that the counseling files in question may indeed contain material evidence bearing on the question of N.K.'s veracity, we hold that the court erred in its balancing of the interests involved. Therefore, defendant is entitled to have the court conduct an in camera review of the requested documents.[2]

¶ 27. We note that the privileged relationship between sexual assault therapist and victim is not implicated here. This is not a case where a sexual assault victim has sought counseling after the attack, and defendant then seeks discovery of those communications to test her recollection or her ability to remember events. Rather, the only counseling records eligible for in camera review in this case are those pertaining to issues of trustworthiness addressed by N.K. and her school counselors at times unrelated to the alleged offenses.

¶ 28. Furthermore, when the patient declares his or her willingness to disclose privileged information outside of the protected relationship, the public policy reasons for nondisclosure are greatly weakened. In general, "[a] patient has a privilege to refuse to disclose and to prevent any other person . . . from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental, dental, or emotional condition . . . ." V.R.E. 503(b). The purpose of this privilege is to protect patients from unwanted disclosures of sensitive information to third persons. Preservation of confidentiality beyond the point of voluntary disclosure by the patient is to "'preserve a privacy which exists in legal fiction only.'" *State v. Mincey*, 687 P.2d 1180, 1194 (Ariz. 1984) (quoting 8 Wigmore, Evidence § 2389(4), at 860-61 (McNaughton rev. 1961)). While it is unnecessary today to rule on whether N.K. actually waived her patient privilege pursuant to Rule 503(d)(3)[3] by filing a civil claim for damages for emotional distress, her claim to privacy is diminished by her demonstrated willingness to openly discuss at least some of the contents of her mental health records in pursuit of money damages. In balancing defendant's request

---

[2] In this connection, we note that the trial court enjoys discretion to direct limited discovery reasonably necessary to minimize either any privacy intrusion or the time required to conduct an in camera inspection of documents, or both. See *Schmitt v. Lalancette*, 2003 VT 24, ¶ 9, 175 Vt. 284, 830 A.2d 16 (observing that "trial court rulings on discovery . . . are left to the sound discretion of the trial judge").

[3] Rule 503(d)(3) provides that "[t]here is no privilege under this rule as to a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense . . . ."

for potentially material evidence with N.K.'s interest in preserving confidentiality, the confidentiality interest is lessened because the asserted privacy interest exists largely as a legal fiction.

¶ 29. We turn now to the analysis of defendant's showing of need for the privileged information. We hold that defendant made a particularized preliminary showing that the counselors' privileged records likely contained material evidence necessary to his defense. The school records that defendant attached to his motion demonstrated a series of events, occurring around the general time of the alleged offenses, that cast doubt upon N.K.'s truthfulness. The records reflected problems that Austine staff members had with N.K. as a result of her lying, including a prior false allegation of improper touching, and revealed that N.K. had received at least some counseling for issues relating to trustworthiness. Because these records related specifically to N.K.'s truth-telling, they suggest that in camera review of Weiner's and Schaeffer's counseling records might have revealed evidence bearing on N.K.'s veracity, supporting defendant's theory that N.K. struggled with telling the truth. As stated above, *supra*, ¶ 14, N.K.'s documented problems with truthfulness form the only proper basis for in camera review here.

¶ 30. Despite the quality of defendant's offer of proof, the court denied his motion for further discovery. The court's conclusion was based on two erroneous determinations: first, that the evidence was not sought for exculpatory purposes; and second, that the evidence sought by defendant would be cumulative to evidence already in his possession. We address each of these in turn.

¶ 31. Because the evidence at trial included neither physical evidence nor testimony from corroborating witnesses, N.K.'s credibility was one of "the core issue[s] to be resolved by the jury." *Commonwealth v. Sheehan*, 755 N.E.2d 1208, 1212 (Mass. 2001) (internal quotations omitted). Evidence pertaining to the extent to which N.K. struggled with lying "could have been helpful for the jury to determine whether the complainant was telling the truth or whether [she] imagined the entire incident." *Id.* (internal quotations omitted). Furthermore, because the Due Process Clause requires the government to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment, *Brady*, 373 U.S. at 87, the United States Supreme Court has "disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes." *Kyles v.*

*Whitley*, 514 U.S. 419, 433 (1995). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Thus, the court's emphasis on the exculpatory value of the information was misplaced because, in this case, evidence of the extent to which lying was a problem for the complaining witnesses may well have been material and thus affected the outcome of the trial.

■ ¶ 32. Furthermore, the court erred by concluding that the sought-after information would be cumulative before examining the contents of the records. Such a procedure would satisfy the constitutional concerns raised by the denial of access, *Ritchie*, 480 U.S. at 61, as we "rely particularly heavily on the sound discretion of the trial judge to protect the rights of the accused as well as the government." *Rubalcada v. State*, 731 N.E.2d 1015, 1018 (Ind. 2000) (internal quotations omitted).

■ ¶ 33. Nonetheless, defendant is not entitled to unfettered access. As limited as the privacy interest may be in this case, there is still no reason to "sacrifice unnecessarily" the confidential nature of N.K.'s communications with her counselors. *Ritchie*, 480 U.S. at 60. The purposes behind statutory privileges "would be frustrated if this confidential material had to be disclosed upon demand to a defendant . . . simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result." *Id.* at 61. In camera review "provides a useful intermediate step between full disclosure and total nondisclosure." *State v. Gagne*, 612 A.2d 899, 901 (N.H. 1992) (internal quotations omitted). Thus, we hold that the balance between statutory privileges and a defendant's right to a fair trial can be adequately protected by in camera review of privileged records by the trial court. Accord *Ritchie*, 480 U.S. at 60; *Commonwealth v. Bishop*, 617 N.E.2d 990, 996 (Mass. 1993); *People v. Stanaway*, 521 N.W.2d 557, 574 (Mich. 1994); *Gagne*, 612 A.2d at 901; *State v. Kelly*, 554 A.2d 632, 636 (R.I. 1989).

II.

■ ¶ 34. We turn now to the prosecutor's closing arguments at trial. At trial, defense counsel presented a series of school witnesses who contradicted portions of N.K.'s account of the underlying events. In many places, the witnesses testified that they did not remember certain incidents that N.K. described. During his closing, the prosecutor

suggested that he would have charged several defense witnesses with perjury, but for their claimed lack of memory:

> There is a difference between perjury and very biased testimony, as I'm sure all of these witnesses know, and that's why you get a lot of, "I don't remember," because *how can I prove whether or not they remember something when I now charge them with perjury?* How can I prove that? There's no way to prove that.

(Emphasis added.) Even if inadvertent, the statements amounted to an expression of personal belief that the defense witnesses were lying — a belief backed by the prosecutor's declaration that a perjury charge was deliberately frustrated by the witnesses. We have long condemned prosecutors' statements conveying their beliefs or opinions about a case. See *State v. Ayers*, 148 Vt. 421, 425, 535 A.2d 330, 333 (1987) (faulting a prosecutor's statement of personal belief that the defendant was guilty); *State v. Messier*, 146 Vt. 145, 159, 499 A.2d 32, 42 (1985) ("It is axiomatic in criminal jurisprudence that prosecutors must refrain from expressing their personal belief as to the defendant's guilt in their closing argument."); *State v. Parker*, 104 Vt. 494, 500, 162 A. 696, 699 (1932) (denouncing as "prejudicial" a prosecutor's statement that "I naturally believe that this complaint is warranted and I think that I was justified in issuing it."). We disapprove of such statements because they create "a great risk that the jury will give special weight to this opinion because of the prestige of the prosecutor and the fact-finding facilities available to the office." *Ayers*, 148 Vt. at 425, 535 A.2d at 333.

¶ 35. The prosecutor also made representations about an Austine School lawyer's statements during the civil proceedings that undermined the veracity of the defense witnesses. He said:

> I was, in preparation for the trial, looking through some transcripts related to the civil proceeding and I was reading something from one of the Austine School lawyers and it says something like, "Well, you know, we've got nothing against [N.K.]. We don't know whether or not she's telling the truth. We don't know."

There was no evidence introduced on this point during the criminal trial. "The longstanding rule in Vermont is that counsel should confine

argument to the evidence of the case and inferences properly drawn from it . . . ." *State v. Lapham*, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977). While prosecutors are entitled to a good deal of latitude in their closing arguments, they are "bound to keep within the limits of fair and temperate discussion . . . circumscribed by the evidence in the case." *State v. Hannett*, 54 Vt. 83, 89 (1881).

¶ 36. On appeal, the State concedes that the prosecutor should not have raised in closing arguments material not introduced as evidence at trial. The State argues instead that, because defense counsel did not object to either the perjury comments or the reference to the civil proceedings, we may not reverse absent plain error.

■ ¶ 37. A finding of plain error "require[s] a showing that the error strikes at the heart of [a] defendant's constitutional rights or results in a miscarriage of justice." *Ayers*, 148 Vt. at 426, 535 A.2d at 333. Because we afford prosecutors a great deal of latitude when making their closing arguments, we have found plain error "only if the argument is manifestly and egregiously improper." *Id.* (internal quotations omitted). Thus, in the context of a challenge to a closing argument, a finding of plain error is supported only when the defendant "establish[es] that the prosecutor's closing argument was not only improper, but also that it impaired the defendant's right to a fair trial." *State v. Gates*, 141 Vt. 562, 566-67, 451 A.2d 1084, 1086 (1982).

■ ¶ 38. Though the threshold for plain error is high, the prosecutor's statements in this case went beyond a general attack on the "veracity, consistency, or bias" of the defense witnesses. *Id.* at 567, 451 A.2d at 1086. The prosecutor's representation that he would have considered charging the defense witnesses with perjury went beyond the "limits of fair and temperate discussion," *Hannett*, 54 Vt. at 89, by stating blatantly his opinion that the defense witnesses lied under oath when they testified. This opinion plainly prejudiced the defendant's right to a fair trial because the credibility of the defense witnesses was a critical issue to be resolved by the jury. Furthermore, the attempt to undermine the credibility of the defense witnesses by purporting to quote from transcripts not in evidence was "manifestly and egregiously improper." *Ayers*, 148 Vt. at 426, 535 A.2d at 333. The portion of the transcript described by the prosecutor suggested that the lawyers for defendant's employer had no reason to disbelieve N.K. This directly undermined defendant's presentation of a series of reasons as to why the allegations should not be believed and created an unsupported inference that defendant's theory of the case was fabricated.

¶ 39. The statements in this case both expressed a personal belief about the case and drew on material not admitted as evidence in a manner calculated to prejudice the jury's resolution of the core issue of the case. For these reasons, we conclude that the prosecutor's errors during his closing argument deprived defendant of his right to a fair trial and require reversal of the conviction.[4]

*Reversed and remanded for further proceedings consistent with this opinion.*

---

[4] Just prior to oral argument, defendant moved for leave to submit additional briefing on the denial of his motion for a new trial. Defendant's motion is denied as moot in light of this decision.