*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-319

APRIL TERM, 2011

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| | } |
| v. | } Superior Court, Washington Unit, |
| | } Criminal Division |
| | } |
| Wallace Nolen | } DOCKET NO. 443-4-09 Wncr |

Trial Judge: Brian J. Grearson

In the above-entitled cause, the Clerk will enter:

Defendant appeals his convictions on three counts of careless and negligent operation following a jury trial. On appeal, defendant argues that he is entitled to a new trial because the prosecutor made impermissible statements about defendant's credibility during closing arguments. We affirm.

In April 2009, defendant was charged with three counts of each careless and negligent operation and attempted simple assault. The charges arose out of incidents involving defendant and a United States Postal Service (USPS) worker. A jury trial was held in March 2010.

The USPS carrier testified at trial concerning the three incidents that occurred in February and March 2009. First, the carrier testified that while he was walking to deliver mail, he observed defendant's vehicle purposefully swerve at him, soaking him with spray from a puddle. He stated that he observed defendant give him the finger as he drove by.[*] Second, the carrier testified that on a different day when he was driving back to the post office, defendant was driving in the opposite direction and swerved toward him. According to the carrier, he had to swerve right to avoid defendant's oncoming car. Again, he alleged that defendant gave him the finger. Finally, the carrier testified that on a third day he was finishing his deliveries when he observed defendant's vehicle approaching him. The carrier observed defendant take both hands off of the wheel to give him the finger. He stated that defendant had to scramble to grab the steering wheel back and not run into the carrier.

At the close of the State's case, defendant moved for a judgment of acquittal, arguing that the State failed to make a prima facie case. The court granted the motion for the attempted simple assaults based on the first two incidents, and dismissed those two charges.

---

[*] As used by the parties both at trial on appeal, this phrase describes the offensive act of lifting one's middle finger at someone else.

The case proceeded on the remaining four charges, and defendant testified on his own behalf. Defendant recounted an ongoing dispute with the USPS about delivery of mail to his home, but he denied any wrongdoing related to the USPS carrier. He recounted his version of the events on the days in question. As to the first incident, he stated that he had not seen the carrier on that day, but may have gone through a puddle at that location. He remembered passing the carrier on the second occasion, but claimed any swerving was done to avoid potholes in the road. He also remembered the third encounter and again explained that he moved out of his lane to maneuver around potholes, but denied he took his hands off of the wheel. During cross-examination, defendant described the conversation he had with police when they first came to his house to ask him some questions about the postal carrier:

> I said, "What have I supposedly . . . done to this [USPS carrier]?" . . . . [The police] said, "Oh, you're giving him the finger." And I said, "What do you mean I'm giving the finger?" I said, "Let's assume that, for argument's sake, that I was giving him the finger," which I flatly deny and I denied at that point, I said, "The U.S. Supreme Court has said giving the finger to somebody is protected speech."

Later, the following exchange took place between the prosecutor and defendant:

> [Prosecutor]: But when you are on the streets, you use your protected form of speech to let [the USPS carrier] know how angry you are.
>
> [Defendant]: That's only happened a couple of times and most of the time, if anything, he's giving it to me and I give it back to him just as a—you know, "Hello," you know?
>
> [Prosecutor]: You said a couple of times, but a little while back you said you've never—
>
> [Defendant]: Never in these three instances did I give him the finger. That was the question that I was asked.
>
> [Prosecutor]: But you've done it multiple times:
>
> [Defendant]: Sure. Maybe five, six, seven times at most, over the whole period.

During her closing rebuttal, the prosecutor made the following statement concerning the credibility of defendant:

> [Defendant] sat here and lied to you. He said, "I have never ever flipped [the USPS carrier] the bird." And, see, the importance of the bird, it shows his state of mind. His anger. . . . He says, "I have never." And then later he tells you, "Well, maybe a couple times." And then he says, "Oh, no, that was six or seven times." You want to talk about credibility? Use your common sense

2

Defendant did not object to this statement. The court instructed the jury on the charges, and specifically charged the jury not to consider the statements of counsel as evidence. Defendant was convicted on all three counts of careless and negligent driving, but acquitted on the remaining count of attempted simple assault.

Defendant filed a motion for a new trial, alleging several grounds including that the prosecutor made improper statements about his credibility during closing argument. Because defendant also raised claims of ineffective assistance, including counsel's failure to object to prosecutor's closing argument, the court assigned new counsel. The court held a series of hearings on defendant's motions. At the final hearing on June 28, 2010, the court rendered a ruling on the record. The court concluded, based on its review of the record, that the prosecutor's single statement during rebuttal did not amount to plain error, especially in light of the court's instruction that counsel's arguments are not evidence and that the issue of whether defendant gave the carrier the finger was not central to the defense.

Defendant appeals. Because defendant did not object at trial, he argues now that the prosecutor's comments about his credibility during closing statements amount to plain error.

Plain error requires "a showing that the error strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Ayers, 148 Vt. 421, 426 (1987). "[I]n the context of a challenge to a closing argument, a finding of plain error is supported only when the defendant establishes that the prosecutor's closing argument was not only improper, but also that it impaired the defendant's right to a fair trial." State v. Rehkop, 2006 VT 72, ¶ 37, 180 Vt. 228 (quotation and alteration omitted).

We conclude that the prosecutor's statements did not rise to plain error. We consider "several nonexclusive factors" in assessing whether a prosecutor's statement requires reversal including:

> the blatancy of the challenged statement, the impact on the theory of the defense, the persistence and frequency of the statement, the opportunity for the court to minimize potential prejudice, the strength of the evidence supporting the relevance of the statement, the overall strength of the State's case, the apparent motivation for making the remarks, and whether the statement was inflammatory and attacked defendant's character.

State v. Hemond, 2005 VT 12, ¶ 12, 178 Vt. 470 (mem.) (citation omitted). In this case, the factors weigh against reversal. This was a single statement made in rebuttal. Cf. Ayers, 148 Vt. at 424-25 (concluding prosecutor's statements amounted to plain error where prosecutor made a number of statements expressing a personal opinion that defendant's version was false and other witnesses were believable). The prosecutor commented on the inconsistencies in defendant's testimony and drew inferences from those inconsistencies. While defendant claims that his testimony did not create such inconsistencies, there is factual support in the record for the prosecutor's statements. See State v. Billado, 141 Vt. 175, 181-82 (1982) (recounting general rule that counsel may "comment on evidence properly admitted at trial" and "draw legitimate inferences from the record" (quotation omitted)). Further, the statement did not go the heart of the defense. It was about whether defendant had given the finger to the postal carrier—a fact

that was separate from the charged conduct of careless and negligent operation. Further, the court minimized the prejudice by instructing the jury not to consider statements of counsel as evidence. Thus, we conclude there was no plain error and no grounds for a new trial.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice