### State of Vermont v. Peter Edward Riva

[481 A.2d 1060]

No. 186-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed August 10, 1984

*Richard G. English,* Addison County State's Attorney, Middlebury, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Hill, J.** The defendant appeals his conviction for welfare fraud in violation of 33 V.S.A. § 2581(a). We affirm.

The facts of this case are as follows. In May of 1980, Chris Barrows, an income maintenance specialist with the Depart-

ment of Social Welfare, visited the home of Lori Kip. Kip had been receiving welfare benefits through the Aid to Needy Families with Children (ANFC) program because she had a child, and the child's father, the defendant, was not living in the home. During Barrows' visit she was informed that the defendant was going to marry Kip and was in the process of moving into the home. Barrows then told Kip and the defendant that Kip would no longer be eligible for benefits under the ANFC's "absent parent" program because the defendant was no longer going to be absent from the home. Because the defendant was unemployed, Barrows suggested that he and Kip might be eligible for ANFC benefits under the "unemployed parent" program. Following this suggestion, the couple subsequently visited Barrows at her office. Barrows explained the "unemployed parent" program eligibility requirements and told the defendant that he must report all income and all changes in income. Barrows testified at trial that she asked the defendant whether he was receiving unemployment compensation, and he answered that he was not. The defendant testified at trial that Barrows never asked him that question.

As a result of the office interview, Barrows determined that the couple was eligible for benefits under the "unemployed parent" program. It was later discovered that the defendant was receiving unemployment compensation, and had been receiving such compensation at the time he went to Barrows' office. If Barrows had known the defendant was receiving unemployment compensation she would have determined that he was ineligible for benefits under the ANFC "unemployed parent" program. The defendant was convicted of violating 33 V.S.A. § 2581(a) by "knowingly fail[ing], by false statement . . . to disclose a material fact used in making a determination" of his eligibility to receive benefits.

The defendant argues that the trial court should have granted his motion for acquittal because the State failed to show that his false statement to Barrows was made in connection with an application for welfare benefits. We reject this argument. In *State* v. *Phillips*, 142 Vt. 283, 455 A.2d 325 (1982), we stated that one may violate § 2581(a) by "fraudu-

lently fail[ing] to disclose a material fact used in making a determination as to one's *initial* qualifications to receive aid . . . ." *Id.* at 286, 455 A.2d at 326–27 (emphasis in original). Clearly, the meeting at Barrows' office was for the purpose of making an initial determination of the defendant's eligibility to receive aid: Barrows had informed the defendant and Kip that Kip was no longer eligible for benefits under the "absent parent" program, and suggested that the defendant might be eligible under the "unemployed parent" program. The defendant visited Barrows at her office two days after Barrows made this suggestion, and the defendant testified that he went there because he "wanted to see if I was eligible. . . . I guess you might say I knew I was applying for welfare, yes." This evidence, when viewed in the light most favorable to the State, was sufficient to convince the jury that the defendant was guilty beyond a reasonable doubt. See *State* v. *Derouchie*, 140 Vt. 437, 445, 440 A.2d 146, 150 (1981) (test for reviewing denial of motion for acquittal is whether evidence, when viewed in light most favorable to State, is sufficient to convince reasonable trier of fact that defendant is guilty beyond a reasonable doubt).

██ The defendant also argues that the trial court should have granted his motion for acquittal because he never filled out a written application for benefits, and welfare regulations require that applications for benefits be in writing. 45 C.F.R. § 206.10(a) (1) (ii) ; Vermont Welfare Assistance Manual § 2208. We reject this argument also. The failure to fill out a written application form violated welfare regulations, but was irrelevant to the defendant's conviction. The jury found that the defendant made the false statement, the testimony revealed that the defendant was given the required information concerning welfare eligibility, the defendant admitted that he knew he was applying for welfare, and the defendant did in fact receive benefits. This constituted sufficient evidence for the jury to find the defendant guilty of welfare fraud beyond a reasonable doubt.

The defendant next argues that the state's attorney prejudiced the defendant's right to a fair trial by arguing to the

jury that the defendant lied to Barrows because he had lied on an earlier, unrelated application for unemployment benefits.* Evidence of this earlier lie had been properly admitted for impeachment purposes. The defendant contends, however, that the prosecutor improperly converted this impeachment evidence into evidence that the defendant was the sort of person who lies on applications. The defendant argues that evidence of prior bad acts to show predisposition to commit a crime is inadmissible under *State* v. *Patnaude*, 140 Vt. 361, 438 A.2d 402 (1981), so the prosecution's arguments to the jury were improper.

The State argues that the defendant's credibility was the central issue in the case, since Barrows testified she asked the defendant whether he was receiving unemployment and the defendant testified that Barrows did not ask him that question. The State contends that it used the impeachment evidence in its closing argument only to show the defendant's lack of credibility and not to show predisposition.

■ The defendant did not object at trial to the state's attorney's closing argument. Therefore, this Court will not consider the defendant's claim on appeal unless the error constitutes plain error of constitutional dimension. *State* v. *Towne*, 142 Vt. 241, 245, 453 A.2d 1133, 1134 (1982) ; *State* v. *Morrill*, 127 Vt. 506, 511, 253 A.2d 142, 145 (1969) ("In order to reach the question attempted to be raised we must first decide whether this is one of those rare and extraordinary cases where a glaring error occurred during the trial and was so grave and serious that it strikes at the very heart of the [defendant's] constitutional rights.") ; V.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). After reading the transcript of the prosecution's closing argument, we are unable to say that the statements in question constitute the plain error necessary for us to review the defendant's claim. Therefore, we reject the defendant's argument.

---

* The defendant admitted that, when filling out an earlier application for unemployment compensation, he had falsely stated that he was married.

■ The defendant's final contention is that he was denied his right to a fair trial because the prosecutor's closing argument contained improper statements of personal belief as to the defendant's guilt and the veracity of the witnesses. The defendant did not object to the state's attorney's argument at trial, so he asks this Court to reverse on the basis of plain error. See *State* v. *Moran*, 141 Vt. 10, 20, 444 A.2d 879, 884 (1982) (through plain error rule, Court will address a manifestly improper argument by prosecution in closing argument on its own motion because of possible adverse effect on fair administration of justice and rights of defendant).

■■ We reiterate our longstanding rule that during closing arguments counsel may not make inflammatory statements, may not depart from the evidence presented at trial, and may not inject their personal beliefs as to the guilt of the accused. *State* v. *Parker*, 104 Vt. 494, 500–03, 162 A. 696, 699 (1932). Counsel may, however, point out what the evidence shows and the inferences that can be made from the evidence. *State* v. *Savo*, 141 Vt. 203, 213–14, 446 A.2d 786, 792 (1982).

In reviewing the statements made by the prosecutor in this case, we conclude that they were within the bounds of the rules stated above. Therefore, they do not constitute the plain error necessary for us to reverse the conviction.

*Affirmed.*