## State of Vermont v. Dennis E. Ayers

[535 A.2d 330]

No. 85-039

Present: **Allen, C.J., Peck and Dooley, JJ., and Keyser, J. (Ret.), and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed September 11, 1987

422

*William D. Wright*, Bennington County State's Attorney, and *Deborah A. Barnard*, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*David W. Curtis*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant appeals his conviction, after a jury trial, of careless and negligent operation of a motor vehicle in violation of 23 V.S.A. § 1091(a). Defendant raises two issues on appeal: whether certain hearsay evidence was admitted improperly and whether statements of the prosecutor made in closing argument were so prejudicial as to require a new trial. We reverse and remand for a new trial.

The incident giving rise to the conviction arose out of a marital dispute. At the time, defendant and his wife were living separately, with two of their daughters residing with defendant and the other with the wife. On the day of the incident, the wife drove to defendant's house and left one daughter for a visit while taking another with her. Thereafter she drove home to Bennington by a circuitous route.

According to the testimony of the wife and the 13 year old daughter who was with her, they encountered defendant twice along the road. After the second encounter, defendant followed his wife in his vehicle, accelerating to bump into her from behind. Thereafter, he swung out and pulled along side her in the lane of oncoming traffic in an attempt to force her to stop her vehicle. The two vehicles finally reached a state police barracks along

Route 7 in Shaftsbury. The wife tried to turn left into the barracks access road and was blocked by defendant. Only by backing up on Route 7 was she able to get to the state police. On entering the barracks, she gave a statement to a state police officer who described her as "visibly shaken . . . extremely nervous, upset, . . . bordering on tears off and on."

Defendant's story was much different. He agreed with the wife's testimony on her visit to his house and on the fact of the first encounter on the road. Thereafter, he said he went home and never saw his wife again on that day.

At trial, the wife and child who was with her testified, relating the story of the encounters with defendant. The state police officer also testified relating the statement given by the wife at the Shaftsbury barracks.

The defendant appeared pro se. He attempted limited cross-examination of the State's witnesses. He took the stand and related his version of the events. He called no other witnesses.

The entire trial including evidence, closing arguments and the charge to the jury was concluded in a morning. The jury found defendant guilty.

■ First, defendant claims that the admission of the officer's hearsay testimony about the statement of the wife given at the Shaftsbury police barracks was reversible error. The State admits that the testimony of the state police officer was hearsay but argues that it was admissible under Vermont Rule of Evidence 803(2), the exception for excited utterances. The exception covers statements about a "startling event or condition" which is made while the "declarant was under the stress of excitement caused by the event or condition." V.R.E. 803(2). We agree with the trial court that the evidence of the officer was admissible under the exception.

The defendant concedes that the wife's statement related to a startling event. The car bumping incident combined with defendant's attempts to block access to the police barracks constituted a battery that would have excited a reasonable person. It was comparable to the fire this Court found startling in *State* v. *Solomon*, 144 Vt. 269, 272, 476 A.2d 122, 124 (1984).

There was ample evidence from which the trial court could find that the declarant was under the stress of excitement of the event. The officer testified that the wife was upset, bordering on tears and her voice "quivered heavily." See *State* v. *Hafford*, 410

A.2d 219 (Me. 1980); *McCurdy* v. *Greyhound Corp.*, 346 F.2d 224 (3d Cir. 1965); *State* v. *Rohdes*, 23 Ohio St. 3d 225, 492 N.E.2d 430 (1986). The controlling effect of the excitement can continue even though the officer had "to calm her down" sufficiently to get a statement. *State* v. *Mateer*, 383 N.W.2d 533, 535-36 (Iowa 1986) (declarant had to be calmed down to give a statement; stress still dominant even though declarant could act "rationally").

The underlying factual findings to support the elements of the exception are for the trial court and will not be overturned unless they are clearly erroneous or there is an abuse of discretion. See *State* v. *Sprague*, 144 Vt. 385, 389, 479 A.2d 128, 130-31 (1984); cf. V.R.C.P. 52(a); McCormick on Evidence § 297, at 857 (E. Cleary 3d ed. 1984) (trial courts have "wide discretion" to determine whether declarant was under the influence of the exciting event). In this case, the court took an offer of proof and considered the foundation facts in a conference at the bench outside the hearing of the jury. See V.R.E. 103(a). Given the discretion accorded the trial court and the careful consideration of the issue to prevent prejudice to the pro se defendant, the decision to admit the evidence must be affirmed.

Defendant argues that our law has an additional requirement that the statement be "spontaneous" and that this element was not present in this case. The term "spontaneous" was used to describe the excited utterance exception in *State* v. *Solomon*, 144 Vt. at 272, 476 A.2d at 124, as taken from McCormick's treatise on evidence. See McCormick on Evidence § 297, at 855 (E. Cleary 3d ed. 1984). It is more a restatement of the kind of declaration that fits the rationale for the exception than a separate element. See 4 J. Weinstein & M. Berger, Evidence § 803(2)[01], at 803-85-86 (1983). The important attribute of the statement is that the declarant's powers of reflection and fabrication be suspended because of the controlling effect of the excitement. This attribute creates the trustworthiness on which the rule is based. The circumstances surrounding the wife's statement here showed it did not result from reflection, and the opportunity for fabrication was minimal.

The defendant's second claim—prosecutorial misconduct in the closing argument to the jury—presents a more substantial issue. In the closing and rebuttal arguments, the prosecutor made a number of statements that indicated a personal opinion that the defendant's version of the events was false. In the closing argu-

ment, he said: "I think . . . that the story which Mrs. Ayers has told you today is the truth. It is what happened." and "I believe that Mr. Ayers on that day severely breached that responsibility [as a driver] by undertaking the actions [on the road]." In his rebuttal argument, he said: "I believe the believable testimony here, the testimony consistent with Mr. Ayers' state of mind on that day and with what happened, is Mrs. Ayers' testimony and the testimony of her daughter."

In a long line of cases beginning with *State v. Parker*, 104 Vt. 494, 500, 162 A. 696, 699 (1932), this Court has condemned statements by the prosecutor that indicate a personal belief that the defendant is guilty. See *State v. Brown*, 147 Vt. 324, 328-29, 515 A.2d 1059, 1062-63 (1986); *State v. Messier*, 146 Vt. 145, 159-61, 499 A.2d 32, 37-38 (1985); *State v. Riva*, 145 Vt. 15, 20, 481 A.2d 1060, 1063 (1984); *State v. Savo*, 141 Vt. 203, 213, 446 A.2d 786, 792 (1982); *State v. King*, 131 Vt. 200, 208, 303 A.2d 156, 161 (1973); *State v. Ross*, 130 Vt. 235, 238-39, 290 A.2d 38, 40 (1972); *State v. Bishop*, 128 Vt. 221, 229, 260 A.2d 393, 399 (1969); *State v. Jackson*, 127 Vt. 237, 238, 246 A.2d 829, 829-30 (1968); *State v. Gravelle*, 117 Vt. 238, 246, 89 A.2d 111, 116 (1952); see also Code of Professional Responsibility DR 7-106(C)(3) and (4). There is a great risk that the jury will give special weight to this opinion because of the prestige of the prosecutor and the fact-finding facilities available to the office. See American Bar Ass'n, Standards for Criminal Justice, Standard 3-5.8, Commentary at 3-88. Further, statements of opinion suggest that the jury should treat the prosecutor's argument as evidence with the new evidence being the opinion of the prosecutor. *Id.* at 3-89. There is no question that the comments of the prosecutor crossed the line in this case. The case turned entirely on the credibility of the witnesses. If the jury believed the evidence of defendant's wife, there was no alternative to a finding of guilty. Thus, the jury could draw no other conclusion from the prosecutor's remarks than that he thought the defendant was guilty.

The defendant faces a significant barrier to reversal, however. The defendant generally cannot complain of an error below unless a timely objection was made in the trial court, and none appears in this case. Only in exceptional cases involving "plain errors . . . affecting substantial rights" can an error lead to a reversal absent a timely objection. V.R.Cr.P. 52(b). See *State v. Riva*, 145 Vt. at 19, 481 A.2d at 1063; *State v. Bailey*, 144 Vt. 86,

99-100, 475 A.2d 1045, 1053 (1984); *State* v. *Billado*, 141 Vt. 175, 182, 446 A.2d 778, 782 (1982). For "plain error," we have required a showing that the error strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice. See, e.g., *State* v. *Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986); *State* v. *Ramsay*, 146 Vt. 70, 75, 499 A.2d 15, 18 (1985); *State* v. *Campbell*, 146 Vt. 25, 27, 497 A.2d 375, 377 (1985). In challenges to the prosecutor's closing argument, we have found reversible error absent an objection only if the argument is "manifestly and egregiously improper." *State* v. *Bailey*, 144 Vt. at 100, 475 A.2d at 1053. We have rarely found plain error in prosecutor's arguments to the jury even where we have condemned the argument. *State* v. *Riva*, 145 Vt. at 20, 481 A.2d at 1063; *State* v. *Bailey*, 144 Vt. at 101, 475 A.2d at 1054.

■ For a number of reasons, we believe the prosecutor's argument was plain error in this case. First, the argument went directly to the heart of the defense and had obvious prejudicial impact. See *State* v. *Ross*, 130 Vt. at 238, 290 A.2d at 40. The case was entirely about credibility. The prosecutor's opinion that he believed the wife and disbelieved the defendant could have determinative weight for the jury.

Second, the prosecutor repeated his belief a number of times in a short closing argument. The prejudicial comment was not isolated and hardly could be ignored by the jury. Compare *State* v. *Jackson*, 127 Vt. at 238, 246 A.2d at 830; *State* v. *Truman*, 124 Vt. 285, 293, 204 A.2d 93, 99 (1964). See also Annotation, *Prosecutor's Argument to the Accused's Guilt*, 88 A.L.R.3d 449, § 12 at 539 (1978) (number of improper remarks a consideration in whether argument is grounds for reversal).

Third, the defendant was appearing without counsel and was highly unlikely to interrupt the argument of the prosecutor to object even if he knew that the line of appropriate argument had been crossed. We believe that the trial judge has to be very sensitive in such a case so that obvious errors do not creep into the proceeding because of the lack of knowledge of the defendant.[1]

---

[1] In *United States* v. *Young*, 470 U.S. 1, 10 (1985), the Supreme Court, in addressing a claim of prosecutorial misconduct in closing argument, noted that the trial judge has the responsibility to maintain decorum and " 'is not a mere moderator, but is the governor of the trial . . . .' " (quoting *Quercia* v. *United States*, 289 U.S. 466, 469 (1933)). This point is particularly important where the defendant is appearing pro se.

This was an obvious error.[2]

Finally, it appears from the transcript that the prosecutor's motive was to retaliate against entirely proper actions of the defendant. Even if the defendant's argument were improper, the prosecutor does not acquire a license to respond with improper argument. See *United States* v. *Young*, 470 U.S. 1; Belsky, *The Retaliation Doctrine: Promoting Forensic Misconduct*, 50 Alb. L. Rev. 763 (1986). Here, however, the defendant acted within his rights—he could in closing argument make personal comments about credibility because his credibility was the issue. The prosecutor responded in kind by becoming both an advocate and a witness. We infer in his conduct the "studied purpose" to introduce the improper considerations we have condemned in the past. See, e.g., *State* v. *Lapham*, 135 Vt. 393, 407, 377 A.2d 249, 257 (1977).

*Reversed and remanded.*

---

[2] The court gave a general charge to the jury that the statements of counsel are not evidence but did not directly address the prosecutor's remarks with an instruction. Compare *State* v. *Foy*, 144 Vt. 109, 115, 475 A.2d 219, 223-24 (1984) (court struck the argument and immediately cautioned the jury to ignore it). The general charge was not sufficient to respond to the prejudice created in this case.