State v. Decoteau (2006-228)

2007 VT 94

[Filed 31-Aug-2007]

 NOTICE: This opinion is subject to motions for reargument under V.R.A.P.
 40 as well as formal revision before publication in the Vermont Reports. 
 Readers are requested to notify the Reporter of Decisions, Vermont Supreme
 Court, 109 State Street, Montpelier, Vermont 05609-0801 of any errors in
 order that corrections may be made before this opinion goes to press.


 2007 VT 94

 No. 2006-228


 State of Vermont Supreme Court

 On Appeal from
 v. District Court of Vermont,
 Unit No. 1, Windsor Circuit

 Richard Decoteau March Term, 2007


 Theresa S. DiMauro, J.

 Eric M. Lo_pez, Windsor County Deputy State's Attorney, White River
 Junction, for Plaintiff-Appellee.

 Matthew F. Valerio, Defender General, Anna Saxman, Deputy Defender General
 and Josh O'Hara, Legal Intern, Montpelier, for Defendant-Appellant.


 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 ¶ 1. JOHNSON, J. Defendant appeals a violation of probation and
 subsequent probation revocation. On appeal, defendant argues that the
 district court: (1) erred in admitting a discharge summary and hearsay
 testimony at the probation revocation hearing; (2) abused its discretion in
 finding that the probation violation was willful; and (3) violated
 defendant's Fourteenth Amendment due-process right to confront adverse
 witnesses. We conclude that the trial court committed plain error in
 admitting the discharge summary and hearsay testimony; thus, we vacate and
 remand for a new hearing.
 
 ¶ 2. On July 5, 2005, defendant was arraigned for violation of an
 abuse prevention order. Subsequently, defendant was arraigned on
 additional charges, including disorderly conduct and violations of
 conditions of release. Defendant entered several plea agreements to
 resolve these charges. Most recently, defendant entered a global plea
 agreement in February 2006. Pursuant to this agreement, he pleaded guilty
 to a violation of probation and was released on probation with several
 conditions, including that he attend, participate in, and complete a
 residential treatment program to the satisfaction of his probation officer. 
 On March 7, 2006, defendant entered a residential treatment facility called
 Serenity House. Ten days later, Serenity House staff contacted defendant's
 probation officer to inform him that they were discharging defendant from
 treatment for inappropriate language and threatening behavior.

 ¶ 3. On March 20, 2006, defendant was arraigned on his
 probation-violation charge and held without bail. The court held a merits
 hearing on the probation-violation charge on May 17, 2006. At the hearing,
 the State questioned defendant's probation officer regarding defendant's
 dismissal from Serenity House. Defendant's probation officer recounted
 that his overall impression from conversations he had with Serenity House
 staff, in particular defendant's caseworker, was that defendant's attitude
 and behavior had been counterproductive to treatment. Defendant's
 probation officer stated that defendant's caseworker told him that staff
 reminded defendant on a daily basis to watch his attitude. Defendant's
 probation officer offered no dates or specifics concerning these
 conversations, but testified that the caseworker had spoken to defendant a
 couple of times, as had other staff members. Defendant did not object to
 the admission of this testimony.
 
 ¶ 4. The State also introduced, without objection, the discharge
 summary from Serenity House. The discharge summary explained that, while
 in treatment, defendant "displayed intimidating behavior and made several
 derogatory remarks to female clients." In addition, the attached incident
 report explained that defendant was discharged for "violating program
 rules, such as using inappropriate language and threatening behavior." The
 report also commented that defendant exhibited a "general failure to follow
 clear cut staff directives." The report contained no specifics about
 conversations that staff had with defendant and the progress notes
 contained no entries of particular instances when defendant violated
 program rules.

 ¶ 5. Defendant testified at the hearing and recounted his version of
 events leading up to his discharge from Serenity House. Although he
 acknowledged three instances where his behavior may have been construed as
 inappropriate or threatening, he maintained that he had not threatened
 anyone and that Serenity House staff had warned him about his behavior on
 only one occasion prior to discharge. Defendant explained that he felt
 another resident had falsely accused him of threatening behavior in order
 to have defendant removed from the program. The resident's roommate
 testified that he overheard the conversation between defendant and the
 resident in which defendant allegedly threatened the resident. Although
 the roommate could not remember exactly what was said, he testified that
 there were no threatening comments and that the exchange seemed civil.

 ¶ 6. At the close of the evidence, defendant objected to the
 admission of the discharge summary and his probation officer's testimony
 regarding what his caseworker had relayed about defendant's behavior at
 Serenity House. Defendant's counsel explained that she did not object
 sooner because she thought the caseworker would testify and thus be
 available for cross-examination. Without his live testimony, defendant
 argued that admission of the caseworker's statements through defendant's
 probation officer's testimony violated defendant's right to confront
 adverse witnesses. 
 
 ¶ 7. In response, the court noted that defendant did not object at
 the time the evidence was introduced. Nonetheless, the court considered
 the objection and held that the disputed evidence was admissible. The
 court noted that hearsay can be admitted at a probation-revocation
 proceeding if it bears indicia of reliability. The court concluded that
 the discharge summary was reliable because it was the type of information a
 probation officer regularly relies on to make decisions. Further, the
 court reasoned that because the probation officer had direct communication
 with defendant's caseworker, who had the most knowledge about defendant's
 behavior, the content of these conversations was also reliable. Addressing
 the merits, the court found that defendant knew he was required to complete
 a treatment program and that he did not complete this program. Further,
 the court found that defendant engaged in a pattern of disrespectful
 behavior, which he failed to correct after staff repeatedly spoke with him. 
 Thus, the court rejected defendant's argument that the violation was not
 willful and therefore did not amount to a violation of probation. Based on
 this violation, the court revoked probation and imposed the underlying
 sentence. This appeal followed.
 
 ¶ 8. In a probation revocation proceeding, the State has the burden
 of establishing that a probation violation occurred by a preponderance of
 the evidence. State v. Klunder, 2005 VT 130, ¶ 7, 179 Vt. 563, 892 A.2d
 927. The State may meet its burden by establishing that the probationer
 violated an express condition. Id. If the State meets its burden, then
 the burden of persuasion shifts to the probationer to demonstrate that his
 violation was not willful but, instead, resulted from factors beyond his
 control. State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996). 
 Whether a violation occurred is a mixed question of law and fact. Id. The
 trial court must first determine what actions the probationer took and then
 make a legal conclusion regarding whether those acts violate probation
 conditions. Id. We will not disturb the court's findings if they are
 fairly and reasonably supported by credible evidence, and we will uphold
 the court's legal conclusions if reasonably supported by the findings. Id.

 ¶ 9. On appeal, defendant first claims that the court erroneously
 admitted the discharge summary and defendant's probation officer's
 statements regarding what Serenity House staff members told him about
 defendant. Defendant argues that the statements are unreliable hearsay and
 should be excluded. Defendant contends that, without the hearsay evidence,
 the evidence does not support the court's finding that defendant's failure
 to complete the program was willful. The State counters that defendant did
 not preserve his objection and that, in any event, the statements are
 reliable. 

 ¶ 10. Defendant failed to make a timely objection to the admission
 of hearsay statements in his probation officer's testimony and the
 discharge summary at the time they were admitted. See State v. Kinney, 171
 Vt. 239, 253, 762 A.2d 833, 844 (2000) (requiring party to make a timely
 motion to exclude evidence). Although defendant claims his failure to make
 a timely objection was predicated on the assumption that defendant's
 caseworker would testify, such a misunderstanding does not rectify
 defendant's failure to object. Defendant's argument that he preserved the
 objection by challenging the admission at the close of the evidence also
 fails. The party opposing introduction of evidence must object at the time
 the evidence is offered to preserve this issue for appeal. Id. (concluding
 that objection not preserved when made the day after the testimony was
 introduced).
 
 ¶ 11. Having concluded that defendant failed to preserve his
 argument for appeal, we consider whether plain error applies in this
 situation. Generally, in civil proceedings, issues not raised below are
 waived. Pope v. Town of Windsor, 140 Vt. 283, 286, 438 A.2d 388, 390
 (1981). We conclude, however, that a plain-error analysis is appropriate
 in this case. Even though probation-revocation proceedings are not
 "essentially 'criminal' in nature," State v. Brunet, 174 Vt. 135, 141, 806
 A.2d 1007, 1011 (2002), neither are the proceedings wholly civil. State v.
 Leggett, 167 Vt. 438, 446, 709 A.2d 491, 496 (1997) ("A
 probation-revocation proceeding is a hybrid criminal/civil proceeding."). 
 Furthermore, we have applied plain error in civil proceedings when
 "important interests and basic constitutional rights" were implicated. 
 Varnum v. Varnum, 155 Vt. 376, 382, 586 A.2d 1107, 1110 (1990) (addressing
 mother's free exercise of religion claim, even though it was raised for the
 first time on appeal because "fundamental rights and interests [were] at
 stake"). Because defendant's claim involves his right to confront adverse
 witnesses and implicates the validity of the entire proceeding, we examine
 whether the court committed an error that "strikes at the heart of
 defendant's constitutional rights or results in a miscarriage of justice." 
 State v. Ayers, 148 Vt. 421, 426, 535 A.2d 330, 333 (1987); see V.R.Cr.P.
 52(b) (explaining that in exceptional cases where errors "affect[]
 substantial rights," error can lead to reversal absent a timely objection).
 
 ¶ 12. Thus, we consider whether the court committed plain error in
 admitting the discharge summary and defendant's probation officer's
 testimony, both of which contained hearsay about why defendant was
 discharged from the program at Serenity House. Hearsay is not
 categorically inadmissible in a probation-revocation proceeding because the
 rules of evidence do not apply. V.R.E. 1101(b)(3). A probationer is
 entitled to due process under the Fourteenth Amendment and, as such, is
 afforded the right to confront adverse witnesses. See Morrissey v. Brewer,
 408 U.S. 471, 489 (1972) (holding that a parolee is entitled to due
 process, including the right to confront and cross-examine adverse
 witnesses); see also Gagnon v. Scarpelli, 411 U.S. 778, 782, 786 (1973)
 (extending due-process protections to probationers facing revocation). 
 Therefore, "a trial court must make an explicit finding, and must state its
 reasons on the record, whether there is good cause for dispensing with the
 probationer's confrontation right and admitting hearsay into evidence." 
 Austin, 165 Vt. at 396, 685 A.2d at 1081. Although we have not explicitly
 outlined the elements of good cause, we made clear in Austin that the
 reliability of the evidence is a key factor.(FN1) Id.

 ¶ 13. Defendant argues that the discharge-summary report and the
 probation officer's hearsay statements do not bear sufficient indicia of
 reliability to be admissible. In this case, the trial court reasoned that
 the probation officer's testimony was reliable because he spoke directly
 with Serenity House staff, and that the discharge summary was reliable
 because it is the type of evidence probation officers routinely rely upon. 
 We disagree that these facts alone make the hearsay reliable and conclude
 that the hearsay evidence admitted in this case does not contain any of
 the typical guarantees of reliability. 
 
 ¶ 14. We have not adopted a formal test to assess reliability, but
 some important considerations emerge from our review of past cases. The
 first is the presence of corroborative evidence. See Watker v. Vt. Parole
 Bd., 157 Vt. 72, 74, 596 A.2d 1277, 1279 (1991) (finding hearsay
 sufficiently reliable where defendant's own testimony corroborated hearsay
 statements); State v. Finch, 153 Vt. 216, 218, 569 A.2d 494, 495 (1989)
 (concluding that hearsay testimony was reliable because the statements of
 the two hearsay declarants were mutually supportive). Another factor is
 "whether the proffered hearsay is an objective fact reported by the
 declarant or instead contains conclusions which ought to be tested by
 cross-examination." Bailey v. State, 612 A.2d 288, 294 (Md. 1992); see
 Austin, 165 Vt. at 397, 685 A.2d at 1081-82 (concluding that a police
 report does not bear indicia of reliability because unlike a urinalysis it
 is more personal and subject to inferences and conclusions). Finally,
 hearsay evidence is more reliable if it contains a greater level of
 specific detail. See Watker, 157 Vt. at 77, 596 A.2d at 1280 (hearsay
 reliable where specific observations of various police officers included
 same details such as the weather and where the victim was found); see also
 State v. James, 2002 ME 86, ¶ 15, 797 A.2d 732 (including specificity as a
 factor in determining reliability of evidence). 

 ¶ 15. In light of these factors, we conclude that the evidence
 admitted by the trial court does not meet any of the traditional guarantees
 of trustworthiness. First, there was no evidence to corroborate the
 hearsay allegations regarding defendant's misbehavior at Serenity House. 
 Cf. Leggett, 167 Vt. at 440-441, 709 A.2d at 492-93 (1997) (affirming where
 ample direct evidence supported hearsay allegations). Defendant's
 probation officer testified about what he heard from defendant's caseworker
 and the summary contained in notes by staff members, but no non-hearsay
 testimony supported these accounts of defendant's behavior at Serenity
 House or the measures staff took to address defendant's behavior. See
 United States v. Taveras, 380 F.3d 532, 537-38 (1st Cir. 2004) (concluding
 that hearsay testimony was unreliable where there was no corroborating
 evidence of the declarant's statement). 

 ¶ 16. We disagree with the dissent's contention that defendant's own
 statements corroborated, and were cumulative of, the hearsay evidence. 
 Defendant testified that he did not complete the program, but explained
 that he followed staff instructions and did not threaten anyone at Serenity
 House. In addition, although defendant admitted that he made inappropriate
 comments, he testified that Serenity House staff spoke to him about his
 behavior on only one occasion prior to his discharge. Rather than
 corroborating the hearsay statements, this testimony directly conflicted
 with the allegations that staff routinely spoke to defendant about his
 behavior, that he failed to follow staff instructions and that he engaged
 in threatening behavior.
 
 ¶ 17. Second, the type of evidence introduced here contains
 judgments and conclusions, not objective facts. As the Maryland Supreme
 Court in Bailey explained, "whether proffered hearsay evidence is a
 straightforward, objective fact observed by the declarant, or whether it
 contains inferences or conclusions drawn by the declarant, will weigh in
 the court's determination of its reliability." 612 A.2d at 294. The
 hearsay admitted in this case did not recite objective facts about
 defendant's stay at Serenity House, but consisted primarily of conclusions
 and inferences concerning his behavior. Cf. Id. at 293-94 (admitting
 hearsay letter from a treatment center where admitted for the sole purpose
 of demonstrating that probationer failed to complete the program and
 explaining the result might be different "if the State were alleging that
 [the probationer] violated his probation based on characterizations of [the
 probationer's] behavior"). For example, defendant's probation officer
 testified that his impression after speaking with defendant's caseworker
 was that defendant's attitude was counterproductive to treatment. The
 discharge summary reported that defendant violated program rules and
 displayed threatening behavior, but provided no specifics of either. The
 only objective fact in the report was that defendant had been discharged. 
 This is the type of evidence we addressed in Austin, a case in which we
 distinguished a urinalysis report that relies on scientific data from a
 police officer's arrest report, concluding that the latter did not bear the
 same indicia of reliability because it was subject to personal opinion. 
 165 Vt. at 397, 685 A.2d at 1081-82 (citing United States v. Bell, 785 F.2d
 640, 644 (8th Cir. 1986) ("While police reports may be demonstrably
 reliable evidence of the fact that an arrest was made, they are
 significantly less reliable evidence of whether the allegations of criminal
 conduct they contain are true.")). Like the relationship between police
 officers and those they arrest, there is a personal and sometimes
 adversarial relationship between treatment providers and their patients;
 consequently, a treatment report, like a police report, is subjective and
 less inherently reliable than a laboratory report.(FN2) See Bell, 785 F.2d
 at 643-44 (explaining that police reports are inherently more subjective
 than lab reports because of the personal and adversarial relationship
 between officers and those they arrest).

 ¶ 18. Finally, the hearsay allegations were not factually detailed,
 but rather stated as general statements and conclusions. Cf. Egerstaffer
 v. Israel, 726 F.2d 1231, 1235 (7th Cir. 1984) (finding statement reliable
 in part because it was reasonably detailed). Defendant's probation officer
 could not identify any particular conversations that staff had with
 defendant, nor did the discharge summary contain specific information about
 defendant's conduct. Rather, the information that defendant's probation
 officer relayed in his testimony and that was contained in the discharge
 summary amounted to general allegations that defendant had displayed
 threatening behavior and violated rules. In contrast, defendant offered
 detailed accounts of his behavior at Serenity House, including behavior or
 instances he thought staff may have construed as threatening. He also
 recounted the conversation he had with his caseworker prior to his
 discharge. He was unable, however, to effectively rebut the hearsay
 allegations because he could not question witnesses to determine which
 behavior they deemed threatening or to ascertain when he had violated
 rules. See Mason, 631 P.2d at 1055 (noting that it is impossible for the
 defendant to test the accuracy of statements made by state's witnesses if
 they are not available to testify and finding plain error where defendant
 was unable to demonstrate alternative theory). Thus, in considering these
 factors, we conclude that none demonstrate that the evidence was reliable.
 
 ¶ 19. Having concluded that the hearsay evidence was not reliable,
 we further hold that the admission of hearsay was not harmless and was
 plain error.(FN3) The hearsay evidence was critical to the main issue at
 trial--whether defendant's discharge from Serenity House was willful. 
 Defendant's entire theory at trial was that although he was discharged from
 Serenity House, the discharge was due to circumstances beyond his control
 and was not a result of his willful conduct. Thus, the information
 regarding defendant's behavior at Serenity House, the measures staff took
 to address his behavior and the ultimate reason for his discharge were the
 primary disputes at trial. The State demonstrated defendant's behavior and
 the reasons for his violation solely through improperly admitted hearsay
 evidence. See United States v. Comito, 177 F.3d 1166, 1171 (9th Cir. 1999)
 (explaining that the more significant particular evidence is to a finding,
 the more important it is to demonstrate that the proffered evidence is
 reliable); Mason v. State, 631 P.2d 1051, 1057 (Wyo. 1981) (finding plain
 error in admission of hearsay testimony and concluding that defendant's
 interest in questioning the actual source of the information is far
 stronger when the evidence is introduced to establish a substantive
 violation, not merely defendant's general character). 
 
 ¶ 20. Moreover, the court relied on the hearsay evidence in its
 findings and in its decision to revoke probation. Specifically rejecting
 defendant's defense that his violation was not willful, the court found
 that defendant "feels that other people are responsible for his conduct
 when, after ten days of conversations by staff his conduct remained
 unchanged, [and] he was discharged from that program." The court also
 found that defendant engaged in a pattern of inappropriate behavior. The
 only basis in the record for the court's finding that defendant had engaged
 in a pattern of behavior that Serenity House staff tried to speak to him
 about on several occasions is the hearsay testimony related by defendant's
 probation officer.(FN4) Defendant's testimony that staff spoke to him about
 his behavior only on one occasion directly contradicted these findings. 
 Although the district court found that defendant was not credible as a
 witness, there was no source independent of the hearsay evidence from which
 the court could find defendant had engaged in a pattern of inappropriate
 activity and that staff had continually confronted him about this
 behavior--findings that were integral to the court's decision to find a
 violation and revoke defendant's probation. Compare Leggett, 167 Vt. at
 444, 709 A.2d at 495 (affirming probation revocation where sufficient
 evidence supported finding without reliance on objectionable hearsay
 testimony), with Austin, 165 Vt. at 398 (holding that probation-violation
 finding was not supported by credible, non-hearsay evidence). Vacated and
 remanded for a new hearing.

 FOR THE COURT:



 _______________________________________
 Associate Justice

------------------------------------------------------------------------------
 Dissenting
 
 ¶ 21. REIBER, C.J., dissenting. I agree that because defendant
 never objected at trial to admission of the hearsay evidence, he can
 prevail only if we conclude that this is an extraordinary case involving
 manifest injustice. Unlike the majority, however, I conclude that plain
 error is conspicuously absent in this case. Indeed, a review of the
 record, particularly defendant's own testimony, demonstrates unequivocally
 that defendant violated an express probation condition, and further that he
 failed to meet his burden of showing that the violation was beyond his
 control and therefore not willful. At the probation revocation hearing,
 defendant conceded his awareness of the express condition requiring him to
 successfully complete the substance abuse treatment program. He also
 acknowledged engaging in confrontational behavior that resulted in the
 treatment center terminating him from the program. As permitted in
 probation proceedings, the district court allowed hearsay evidence
 concerning the alleged violation. For the most part, that evidence merely
 confirmed the undisputed fact that defendant had been terminated from the
 program and indicated general grounds for the termination. In light of
 defendant's admissions during his testimony, the cumulative nature of the
 admitted hearsay evidence, and defendant's failure to meet his burden of
 demonstrating that his conduct was beyond his control, there is no plain
 error, if any error at all. Accordingly, I respectfully dissent.

 ¶ 22. At the probation revocation hearing, defendant acknowledged in
 his direct testimony that he had been to court on alleged violations of
 probation four times in the past year, and that he was aware he would be in
 violation of his probation if he did not complete the substance-abuse
 treatment program. He also testified that he understood he had been
 terminated from the program for engaging in threatening behavior, and
 further that he knew exactly what incidents had led to the termination
 decision. Defendant then gave a detailed account of those incidents from
 his perspective.
 
 ¶ 23. Regarding the first incident, defendant acknowledged making a
 derogatory remark to a homosexual resident participating in the program--a
 person whom he further acknowledged had expressed great anxiety over being
 picked on at the facility. He also admitted that (1) following the
 incident, the resident informed a counselor that he felt threatened by
 defendant; (2) the counselor confronted defendant about the incident; and
 (3) defendant agreed to stay away from the resident in the future. The
 second incident concerned defendant making inappropriate comments to a
 female resident during a group discussion. Defendant admitted that several
 people in the group were upset by his comments, and that the woman to whom
 he directed the comments was "crazed" over his remarks. 

 ¶ 24. Regarding the third incident that ultimately led to his
 discharge from the treatment program, defendant acknowledged confronting
 the same resident he was warned to stay away from to tell him of his
 displeasure about perceived insults and threats he had received from the
 resident and his "boyfriend." Defendant conceded that he initiated the
 confrontation and informed the resident that he was "pissed . . . off"
 about the perceived insults and threats. He also acknowledged that
 immediately following the confrontation, the resident went to the
 counselor, who shortly thereafter told defendant that his stay at the
 facility was "tenuous." Moreover, by his own admission at the revocation
 hearing, defendant confided to the resident's roommate shortly after the
 third incident that he was concerned about the resident reporting the
 confrontation to the counselor. He further testified that he himself
 approached the counselor shortly after the incident to present his side of
 the story. That same day, defendant was terminated from the program.
 
 ¶ 25. To be sure, defendant's testimony was interspersed with a
 litany of excuses for each of the incidents--he meant the derogatory remark
 only as a joke, he did not mean to insult the woman in the group meeting,
 he never threatened anybody, etcetera. He also relied upon the testimony
 of the roommate of the resident he was accused of threatening--the same
 person he confided in following the incident. Apparently, the counselor
 did not believe him, however, and, as the majority acknowledges, neither
 did the district court. Indeed, in finding a probation violation, the
 court concluded that defendant engaged in the alleged confrontational
 behavior of his own volition despite being warned about it and told to stay
 away from the resident whom he later confronted. Noting that defendant was
 "agitated" and "angry" even when testifying about the conversation he had
 had with the resident, the court concluded that defendant was unwilling to
 acknowledge the threatening nature of his behavior at the facility.

 ¶ 26. Notwithstanding the district court's findings regarding
 defendant's testimony, the majority concludes that the court committed
 plain error by allowing the State to present evidence that merely stated
 what was obvious from defendant's testimony--that defendant was terminated
 from the facility for engaging in inappropriate and threatening behavior. 
 Apparently, the majority would have the district court hold a trial within
 a trial to determine the precise nature of the confrontational
 conversations between defendant and other residents--conversations to which
 even the counselor was not privy. I cannot agree. Defendant acknowledged
 that he was terminated from the program after (1) he angrily confronted a
 resident he was asked to stay away from, and (2) the counselor considered
 conflicting accounts of what happened. That is sufficient evidence, in and
 of itself, to support the district court's finding that he violated a
 probation condition requiring him to successfully complete the program.
 
 ¶ 27. Following defendant's testimony, the court admitted, without
 objection, a discharge report and testimony from defendant's probation
 officer stating what the counselor had told the officer concerning the
 grounds for defendant's discharge. The brief discharge report indicated
 that defendant had been terminated from the program for violating program
 rules by using inappropriate language and engaging in threatening behavior. 
 Defendant's probation officer briefly testified that defendant's counselor
 told him of defendant's counterproductive attitude and behavior,
 particularly with respect to one male and one female resident. He also
 testified that defendant had been warned on several occasions about his
 behavior but did not listen. Although the report and the probation
 officer's testimony did not offer much detail as to exactly what behavior
 led to defendant's discharge from the program, defendant's own detailed
 testimony concerning the incidents revealed the basis for the discharge and
 rendered the hearsay evidence essentially cumulative in nature.

 ¶ 28. As the majority acknowledges, although a probationer has due
 process rights at a probation revocation hearing, the scope of those rights
 is not as extensive as those in a criminal proceeding. For example, the
 "right to confront adverse witnesses does not require the exclusion of all
 hearsay evidence" in probation proceedings. Reporter's Notes, V.R.Cr.P.
 32.1; see State v. Austin, 165 Vt. 389, 395, 685 A.2d 1076, 1089 (1996)
 (holding that the trial court may dispense with a probationer's
 confrontation right and admit hearsay evidence upon a showing of good
 cause, which turns on the reliability of the proffered evidence); see also
 State v. James, 2002 ME 86, ¶¶ 10-11, 797 A.2d 732 (deciding to follow
 United States Supreme Court decisions allowing reliable hearsay evidence in
 probation hearings).
 
 ¶ 29. The majority also recognizes that a probationer objecting to
 the admission of hearsay evidence on confrontation grounds "must apprise
 the trier of fact of the possible violation, express a desire to question
 the witness, ask the State to produce the witness or show 'good cause' why
 the witness is not present, ask for a continuance, raise the confrontation
 issue, or object to the absence of the witness." Austin, 165 Vt. at 392,
 685 A.2d at 1078-79. We require a specific objection on confrontation
 grounds "because it triggers the consideration of a secondary issue,
 namely, whether circumstances making production of the witness difficult or
 impractical outweigh the parolee's need to confront and cross-examine the
 witness." Watker v. Vt. Parole Bd., 157 Vt. 72, 78, 596 A.2d 1277, 1281
 (1991). Hence, "when ruling on the admissibility of hearsay evidence to
 which a probationer has objected on confrontation grounds, [a trial court]
 must make an explicit finding of good cause for dispensing with the
 probationer's confrontation right and admitting the evidence against him." 
 Austin, 165 Vt. at 395, 695 A.2d at 1080 (emphasis added).

 ¶ 30. In this case, however, defendant did not make a timely
 objection to admission of the hearsay evidence, and thus the district court
 had no opportunity to weigh the bases for such an objection against any
 proffered reasons for not calling potential witnesses against defendant. 
 Indeed, it is conceivable that the testimony of the counselor would have
 been more damaging than helpful to defendant. At best from defendant's
 perspective, the counselor's testimony would likely have elicited only
 further hearsay on what the resident and defendant had told him about their
 confrontation. In my view, the district court was not compelled to require
 testimony from the principle actors involved in the confrontations to try
 and determine who said what to whom. Defendant had already testified that
 he had engaged in confrontational behavior that led to his dismissal from
 the program. Thus, defendant's own testimony corroborated the essential
 truth of the hearsay evidence.
 
 ¶ 31. One could argue that there was no error at all, let alone
 plain error, in admission of the unchallenged hearsay evidence. As the
 majority points out, the most important factor in determining good cause
 for allowing hearsay evidence in probation proceedings "is the reliability
 of the evidence offered by the State." Austin, 165 Vt. at 396, 685 A.2d at
 1081; see Bailey v. State, 612 A.2d 288, 293 (Md. 1992) ("In determining
 whether there is good cause to admit hearsay in a probation revocation
 hearing, it is obvious that the most important factor is the reliability of
 the proffered hearsay evidence."). The reliability of evidence "is
 essentially a fact specific issue" within the trial court's discretion, and
 therefore subject to reversal by this Court only upon a showing of an abuse
 of discretion. Bailey, 612 A.2d at 293. Further, as the majority
 acknowledges, the key factors in determining the reliability of hearsay
 evidence at a probation revocation hearing are (1) whether the hearsay
 evidence is corroborated in whole or in part by other evidence at the
 hearing, including the testimony of the probationer; (2) whether the
 hearsay is sufficiently detailed; (3) whether the source of the hearsay
 presents the possibility of bias or a motive to fabricate; and (4) whether
 the hearsay is being offered to prove a central issue in the case. See
 James, 2002 ME 86, ¶ 15; Bailey, 612 A.2d at 293.

 ¶ 32. In my view, these factors point towards admitting the hearsay
 evidence in this case because of its reliability. As described above, the
 hearsay evidence--a discharge summary report and the probation officer's
 testimony concerning the reasons the counselor gave him for terminating
 defendant from the program--was essentially cumulative with respect to
 defendant's own testimony, which acknowledged he was terminated for
 engaging in confrontational and threatening behavior. Cf. State v.
 Leggett, 167 Vt. 438, 443 n.6, 709 A.2d 491, 494 n.6 (1998) (noting that a
 probationer's own implausible and inherently contradictory explanation of
 events can corroborate the State's case); Watker, 157 Vt. at 77, 596 A.2d
 at 1280 (concluding that probationer's acknowledgment of the victim being
 beaten "actually bolstered the hearsay evidence against him,"
 notwithstanding his self-serving assertion that he was not responsible for
 the beating). Moreover, although the hearsay evidence was not detailed, it
 was corroborated by defendant's own detailed testimony.
 
 ¶ 33. Nor do I believe that the source of the hearsay evidence
 introduced here makes it inherently unreliable. Although the majority is
 correct that the hearsay evidence in this case includes subjective
 judgments and conclusions, I disagree that the discharge summary and the
 probation officer's testimony regarding the counselor's reason for the
 discharge are the equivalent of a police affidavit following an arrest. 
 The potential bias that might be present in a police report because of the
 personal and adversarial relationship between a police officer and an
 arrested person, see Austin, 165 Vt. at 397, 685 A.2d at 1081-82, is not
 present with respect to the relationship between a counselor or probation
 officer and a probationer participating in a rehabilitative program. See
 Bailey, 612 A.2d at 295 (noting that a letter from a facility explaining
 why the defendant was discharged from its program was inherently reliable
 because of a lack of motive to fabricate the basis for the discharge). In
 any event, the salient effect of the hearsay evidence in this case was to
 confirm that defendant had been terminated from the program for engaging in
 threatening behavior, which resulted in a violation of an express condition
 of his probation. This basic fact, although the central issue in the case,
 was undisputed and admitted by defendant.
 
 ¶ 34. Once the State demonstrated by a preponderance of the
 evidence, either through defendant's testimony or otherwise, that defendant
 had violated a probation condition, the burden was on defendant to prove "
 'that his failure to comply was not willful but rather resulted from
 factors beyond his control and through no fault of his own.' " Austin, 165
 Vt. at 398, 685 A.2d at 1082 (quoting Bailey, 612 A.2d at 291) (internal
 citation omitted). Here, as in Bailey, defendant utterly failed to meet
 his burden of showing a willful violation--indeed, his own testimony
 confirmed a willful violation. In Bailey, the defendant claimed that the
 court violated his confrontation rights at a probation revocation hearing
 by admitting a letter from a facility stating, among other things, the
 reasons for the defendant's discharge from its program. In determining
 that there was good cause to admit the letter, the court concluded not only
 that the letter was inherently reliable and corroborated by the defendant's
 own testimony, but also that the letter was admitted in support of the
 undisputed fact that the defendant had not successfully completed the
 program. Bailey, 612 A.2d at 295. In response to the defendant's argument
 that the letter was offered to prove the additional proposition that the
 violation was not willful, the court reiterated that it was the defendant's
 burden, not the State's, to prove that the violation occurred through no
 fault of his own and therefore was not willful. Id.

 ¶ 35. The same is true here. The State plainly met its initial
 burden--through defendant's own testimony--in showing that defendant had
 not successfully completed the program and thus had violated an express
 probation condition. The discharge summary report and the probation
 officer's testimony merely confirmed this fact, the details of which were
 brought to light through defendant's testimony. Thus, the hearsay evidence
 was admissible on that point. To the extent that the hearsay evidence
 could have been considered in determining the willfulness of the violation,
 it was defendant's burden, not the State's, to satisfy that burden--and
 defendant plainly failed to meet that burden. Indeed, on
 cross-examination, defendant backtracked from his statement that he had
 been warned about his behavior on only one occasion, admitting that his
 counselor had talked to him on a regular basis. As the district court
 found, defendant's own testimony demonstrated that defendant purposely
 confronted a resident even after being told to stay away from him.
 
 ¶ 36. But even assuming that the district court erred in admitting
 the hearsay evidence, defendant did not object (unlike the defendant in
 Bailey), and there is no plain error. There is no precise standard for
 judging whether plain error exists--"we must examine the record in each
 case, and determine whether the error is so prejudicial that 'it undermines
 confidence in the outcome of the trial.' " State v. Johnson, 158 Vt. 508,
 513, 615 A.2d 132, 134 (1992) (quoting United States v. Sblendorio, 830
 F.2d 1382, 1388 (7th Cir. 1987)). Because of defendant's failure to object
 to the hearsay evidence, the district court did not have the opportunity to
 consider or make findings on the question we review for plain error on
 appeal--whether other evidence, including defendant's testimony,
 corroborated the hearsay testimony and thus supported a finding of a
 probation violation. In these circumstances, it becomes this Court's duty
 to "examine the record" and determine whether plain error exists. Johnson,
 158 Vt. at 513, 615 A.2d at 134; see United States v. Young, 470 U.S. 1, 16
 (1985) (reviewing court must evaluate claim of plain error against entire
 record of case).

 ¶ 37. As we have stated on numerous occasions, "[p]lain error exists
 only in exceptional circumstances where a failure to recognize error would
 result in a miscarriage of justice, or where there is glaring error so
 grave and serious that it strikes at the very heart of the defendant's
 constitutional rights." State v. Pelican, 160 Vt. 536, 538, 632 A.2d 24,
 26 (1993). In this case, we should be even more reluctant to find plain
 error. As noted, probation proceedings are considered civil in nature and
 do not involve the full panoply of rights to which defendants are entitled
 in criminal trials. See State v. Kasper, 152 Vt. 435, 439, 566 A.2d 982,
 985 (1989) (noting that "the scope of a probationer's due process rights at
 [a probation revocation] hearing does not parallel the constitutional
 rights afforded a defendant during a criminal trial"); State v. Schroeder,
 149 Vt. 163, 164, 540 A.2d 647, 647 (1987) (per curiam) (holding that a
 parole or probation proceeding "is not the same as a criminal prosecution
 and that such a hearing is flexible enough to allow in evidence that would
 not be admissible in an adversary criminal proceeding"). Therefore, plain
 error should be found only when there is serious and flagrant error calling
 into question the very integrity of the trial. See C. Wright & K. Graham,
 Federal Practice and Procedure § 5043, at 980 (2d ed. 2005) (plain error is
 rarely found in civil cases because the "parties have fewer constitutional
 rights to introduce or exclude evidence").
 
 ¶ 38. In any event, regardless of which standard of plain error we
 apply, a careful review of the record reveals that there was no glaring
 error or manifest injustice at defendant's hearing. Nor does allowing the
 discharge report or probation officer's hearsay testimony undermine one's
 confidence in the outcome of the hearing. Accordingly, I would hold that
 admission of the hearsay evidence in this case was not plain error, if any
 error at all.

 ____________________________________
 Chief Justice 

 ----------------------------------------------------------------------------
 Footnotes

FN1. Other courts consider additional factors, such as the availability of
 the declarant and "whether the evidence is offered to prove the principal
 contested issue in the violation or a matter peripheral thereto." Bailey
 v. State, 612 A.2d 288, 293 (Md. 1992). 

FN2. The dissent contends that the potential bias or motive to fabricate
 present in a police affidavit following arrest is not present here because
 a counselor or probation officer does not have the same personal and
 adversarial relationship with a probationer as a police officer and an
 arrested person. Whether a counselor's relationship with a probationer is
 adversarial, the relationship is definitely personal and any reports are
 inherently subject to bias and interpretation. 

FN3. Because we conclude that the hearsay testimony did not bear
 sufficient indicia of reliability to establish good cause, we do not reach
 defendant's additional arguments that the district court: (1) abused its
 discretion in finding that defendant's violation was willful, and (2)
 violated defendant's Fourteenth Amendment due-process right to confront
 adverse witnesses.

FN4. The dissent concludes that if there was error, it was harmless
 because defendant's own testimony supported the court's finding of a
 probation violation. Although defendant admitted that he was removed from
 the program, the court's conclusion that defendant's violation was willful
 relied on more than the simple fact that defendant did not complete the
 program. The court's findings supporting its conclusion that his
 violation was willful--that staff spoke regularly to defendant and that
 defendant continually engaged in a pattern of inappropriate behavior--were
 based solely on the inadmissible hearsay evidence. Thus, the admission of
 the hearsay testimony was not harmless because it supported the court's
 findings on the disputed issue in the case.